TENNESSEE *v.* STREET

No. 83–2143.   Argued March 18, 1985—Decided May 13, 1985

BURGER, C. J., delivered the opinion of the Court, in which all other Members joined, except POWELL, J., who took no part in the consideration or decision of the case. BRENNAN, J., filed a concurring opinion, in which MARSHALL, J., joined, *post*, p. 417.

*Robert A. Grunow*, Associate Chief Deputy Attorney General of Tennessee, argued the cause for petitioner. With him on the briefs were *W. J. Michael Cody*, Attorney General, and *Wayne E. Uhl* and *J. Andrew Hoyal II*, Assistant Attorneys General.

*Joshua I. Schwartz* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Lee*, *Assistant Attorney General Trott*, and *Deputy Solicitor General Frey*.

*Lance J. Rogers* argued the cause for respondent. With him on the brief were *Stuart Hampton*, by appointment of the Court, 469 U.S. 1103, and *Vivian Berger*.

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether respondent's rights under the Confrontation Clause were violated by the introduction of the confession of an accomplice for the non-hearsay purpose of rebutting respondent's testimony that his own confession was coercively derived from the accomplice's statement.

## I

Ben Tester was last seen alive on August 26, 1981, as he walked toward his home in Hampton, Tennessee. The next day Tester's body was found hanging by a nylon rope from an

apple tree in his yard. Tester's house had been ransacked, and it appeared that Tester had struggled with his assailants.

Respondent, a neighbor of Tester, was arrested and charged with the murder. At respondent's trial, which was severed from the trials of others charged with the crime, the State relied on a detailed confession that respondent made during an interview with Sheriff Papantoniou and agents of the Tennessee Bureau of Investigation on September 17, 1981. According to respondent's confession, he and Clifford Peele decided to burglarize Ben Tester's house when Tester was away at church. While respondent, Peele and two others were in the house, however, Tester returned home and surprised the intruders. Peele threw Tester to the floor and declared that they were going to "string him up." Working toward that end, respondent tore a sheet to make a gag for Tester's mouth. Respondent then watched as the others carried Tester out of the house, placed him in the back of a pickup truck, put a rope around his neck, tied the rope to a tree, and pushed him off the tailgate.[1]

Respondent testified at trial that he did not burglarize Tester's house, nor participate in the murder. He also maintained that his September 17 confession was coerced. The confession, respondent testified, was derived from a written statement that Peele had previously given the Sheriff. Respondent claimed that Sheriff Papantoniou read from Peele's statement and directed him to say the same thing.

In rebuttal, the State called Sheriff Papantoniou to testify about the September 17 interview. The Sheriff denied that respondent was read Peele's statement or pressured to repeat the terms of Peele's confession. To corroborate this testimony, and to rebut respondent's claim that his own con-

---

[1] The Judicial Commissioner of Carter County testified that respondent made another statement on June 27, 1982, while at the county jail. According to this witness, respondent admitted having placed the rope around Tester's neck.

fession was a coerced imitation, the Sheriff read Peele's confession to the jury.[2]  Before Peele's statement was received, however, the trial judge twice informed the jury that it was admitted "not for the purpose of proving the truthfulness of his statement, but for the purpose of rebuttal only."  App. 292, 293.

Although Peele's statement was generally consistent with Street's confession, there were some differences.  For instance, Peele portrayed respondent as an active participant in Tester's hanging, and respondent's statement contained factual details that were not found in Peele's confession.[3]  Following the reading of Peele's confession, the prosecutor elicited from the Sheriff testimony emphasizing the differences between the confessions.

The prosecutor referred to Peele's confession in his closing argument to dispute respondent's claim that he had been forced to repeat Peele's statement.  The prosecutor noted details of the crime that appeared solely in respondent's confession and argued that respondent knew these facts because he participated in the murder.  In instructing the jury, the trial judge stated:

> "The Court has allowed an alleged confession or statement by Clifford Peele to be read by a witness.
>
> "I instruct you that such can be considered by you for rebutable [sic] purposes only, and you are not to consider the truthfulness of the statement in any way whatsoever."  Id., at 350.

Respondent was found guilty and sentenced to life in prison.  The Court of Criminal Appeals of Tennessee, ruling that the introduction of Peele's confession denied respondent his Sixth Amendment right to confront witnesses, reversed.

---

[2] Peele's written statement was also introduced into evidence as an exhibit.

[3] These details included the color and composition of the rope, the source of the gag placed on Tester, and the taking of money from Tester's wallet.

674 S. W. 2d 741 (1984). The court noted that Peele's confession was not hearsay evidence because it was not admitted to prove the truth of Peele's assertions. Nevertheless, the court believed that the jury was left with the impression "that the confession was a true rendition of events on the night of the homicide." *Id.*, at 745. It held, therefore, that "admission of [Peele's] confession for any purpose constitutes a denial of [respondent's] fundamental right to cross-examine those witnesses against him." *Ibid.*[4]

We granted certiorari. 469 U. S. 929 (1984). We reverse.

## II

### A

This case is significantly different from the Court's previous Confrontation Clause cases such as *Ohio* v. *Roberts*, 448 U. S. 56 (1980), *Dutton* v. *Evans*, 400 U. S. 74 (1970), and *Bruton* v. *United States*, 391 U. S. 123 (1968). Confrontation Clause issues arose in *Roberts* and *Dutton* because hearsay evidence was admitted as substantive evidence against the defendants. 448 U. S., at 77; 400 U. S., at 79. And in *Bruton*, the Court considered whether a codefendant's confession, which was inadmissible hearsay as to Bruton, could be admitted into evidence accompanied by a limiting instruction. 391 U. S., at 135–136.

In this case, by contrast, the prosecutor did not introduce Peele's out-of-court confession to prove the truth of Peele's assertions. Thus, as the Court of Criminal Appeals acknowledged, Peele's confession was *not* hearsay under traditional rules of evidence. 674 S. W. 2d, at 744; accord, Fed. Rule Evid. 801(c). In fact, the prosecutor's nonhearsay use of Peele's confession was critical to rebut respondent's testimony that his own confession was derived from Peele's. Before the details of Peele's confession were admitted, the jury

---

[4] The Supreme Court of Tennessee denied the State's application for permission to appeal.

could evaluate the reliability of respondent's confession only by weighing and comparing the testimony of respondent and Sheriff Papantoniou. Once Peele's statement was introduced, however, the jury could compare the two confessions to determine whether it was plausible that respondent's account of the crime was a coerced imitation.[5]

The *nonhearsay* aspect of Peele's confession—not to prove what happened at the murder scene but to prove what happened when respondent confessed—raises no Confrontation Clause concerns. The Clause's fundamental role in protecting the right of cross-examination, see *Douglas* v. *Alabama*, 380 U. S. 415, 418 (1965), was satisfied by Sheriff Papantoniou's presence on the stand. If respondent's counsel doubted that Peele's confession was accurately recounted, he was free to cross-examine the Sheriff. By cross-examination respondent's counsel could also challenge Sheriff Papantoniou's testimony that he did not read from Peele's statement and direct respondent to say the same thing. In short, the State's rebuttal witness against respondent was not Peele, but Sheriff Papantoniou. See generally *Anderson* v. *United States*, 417 U. S. 211, 219–220 (1974).

## B

The only similarity to *Bruton* is that Peele's statement, like the codefendant's confession in *Bruton,* could have been misused by the jury. If the jury had been asked to infer that Peele's confession proved that respondent participated in the murder, then the evidence would have been hearsay; and because Peele was not available for cross-examination, Confrontation Clause concerns would have been implicated. The jury, however, was pointedly instructed by the trial court "not to consider the truthfulness of [Peele's] statement in any

---

[5] The differences between the two confessions do not logically compel the inference that respondent's testimony was false; for instance, respondent may have invented factual details out of whole cloth. Nevertheless, the discrepancies do cast doubt on respondent's version of his interrogation.

way whatsoever." App. 350. Thus as in *Bruton*, the question is reduced to whether, in light of the competing values at stake, we may rely on the "'crucial assumption'" that the jurors followed "'the instructions given them by the trial judge.'" *Marshall* v. *Lonberger*, 459 U. S. 422, 438, n. 6 (1983) (quoting *Parker* v. *Randolph*, 442 U. S. 62, 73 (1979) (REHNQUIST, J.)).[6]

The State's most important piece of substantive evidence was respondent's confession. When respondent testified that his confession was a coerced imitation, therefore, the focus turned to the State's ability to rebut respondent's testimony. Had the prosecutor been denied the opportunity to present Peele's confession in rebuttal so as to enable the jury to make the relevant comparison, the jury would have been impeded in its task of evaluating the truth of respondent's testimony and handicapped in weighing the reliability of his confession. Such a result would have been at odds with the Confrontation Clause's very mission—to advance "the accuracy of the truth-determining process in criminal trials." *Dutton* v. *Evans, supra*, at 89.

Moreover, unlike the situation in *Bruton, supra*, at 134, there were no alternatives that would have both assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of evidence.[7] We do not agree with the Court of Criminal Appeals' suggestion that Peele's confession could have been edited to reduce the risk of jury misuse "without detracting from the alleged purpose for which the confession was introduced." 674 S. W. 2d, at 745; see generally *Bruton, supra*, at 134, n. 10. If all of Peele's references to respondent had been deleted,

---

[6] The assumption that jurors are able to follow the court's instructions fully applies when rights guaranteed by the Confrontation Clause are at issue. See, *e. g., Frazier* v. *Cupp*, 394 U. S. 731, 735 (1969).

[7] Severance obviously was not an available alternative; respondent's trial had been severed from those of his codefendants.

it would have been more difficult for the jury to evaluate respondent's testimony that his confession was a coerced imitation of Peele's. Indeed, such an approach would have undercut the theory of defense by creating artificial differences between respondent's and Peele's confessions.

Respondent correctly notes that Sheriff Papantoniou could have pointed out the differences between the two statements without reading Peele's confession. But such a rebuttal presentation was not the only option constitutionally open. After respondent testified that his confession was based on Peele's, the Sheriff read Peele's confession to the jury and answered questions that emphasized the differences. In closing argument, the prosecutor recited the details that appeared only in respondent's confession, and argued that respondent knew these facts because he participated in the murder. The whole of the State's rebuttal, therefore, was designed to focus the jury's attention on the differences, not the similarities between the two confessions.

Finally, we reject the Court of Criminal Appeals' implicit holding that the State was required to call Peele to testify or to forgo effective rebuttal of respondent's testimony. 674 S. W. 2d, at 745. Because Peele's confession was introduced to refute respondent's claim of coercive interrogation, Peele's testimony would not have made the State's point. And respondent's cross-examination of Peele would have been ineffective to undermine the prosecutor's limited purpose in introducing Peele's confession. It was appropriate that, instead of forcing the State to call a witness who could offer no relevant testimony on the immediate issue of coercion,[8] the trial judge left to respondent the choice whether to call Peele.[9]

---

[8] If Peele did not invoke his privilege against self-incrimination, he might have helped the prosecution prove that respondent participated in the murder; but he would have been of no assistance in rebutting respondent's claim that he had been forced to repeat Peele's confession.

[9] The parties were aware that Peele was located in the county jail.

## III

The State introduced Peele's confession for the legitimate, nonhearsay purpose of rebutting respondent's testimony that his own confession was a coerced "copy" of Peele's statement. The jury's attention was directed to this distinctive and limited purpose by the prosecutor's questions and closing argument. In this context, we hold that the trial judge's instructions were the appropriate way to limit the jury's use of that evidence in a manner consistent with the Confrontation Clause. Accordingly, the judgment of the Court of Criminal Appeals is

*Reversed.*

JUSTICE POWELL took no part in the consideration or decision in this case.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring.

I join the opinion of the Court today admitting Peele's out-of-court confession for nonhearsay rebuttal purposes. I do so on the understanding that the trial court's limiting instruction is not itself sufficient to justify admission of the confession. See *Bruton* v. *United States*, 391 U. S. 123 (1968). The out-of-court confession is admissible for nonhearsay purposes in this case only because that confession was essential to the State's rebuttal of respondent Street's defense and because no alternative short of admitting the statement would have adequately served the State's interest. See *ante*, at 415–416. With respect to the State's need to admit the confession for rebuttal purposes, it is important to note that respondent created the need to admit the statement by pressing the defense that his confession was a coerced imitation of Peele's out-of-court confession.* Also, the record

---

*In fact, at an earlier point in the trial respondent unsuccessfully sought to introduce Peele's confession on the ground that it was "very material" to the argument that respondent's confession was a coerced imitation. App. 41.

contains no suggestion that the State was engaged in any improper effort to place prejudicial hearsay evidence before the jury. See *Douglas* v. *Alabama*, 380 U. S. 415 (1965). Under the circumstances of the present case, admission of the out-of-court confession for nonhearsay rebuttal purposes raises no Confrontation Clause problems.