**Tony Hanif LEE, Plaintiff,**

v.

**Darrell KOLB, Defendant.**

No. 88–C–504.

United States District Court,
E.D. Wisconsin.

Jan. 17, 1989.

Tony Hanif Lee, pro se.

Donald J. Hanaway, Atty. Gen. by Sharon Ruhly, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

Tony Lee's petition for a writ of habeas corpus brings to mind the cartoon of the two ladies in the jury box; one turns to the other and says, "You can be sure that won't be stricken from *my* record."

No citations of authority need be cited for the premise that one of a trial judge's responsibilities is to protect the jury from itself. The question in this case is whether the state trial judge adequately insulated Mr. Lee from the devastating impact on the jury of certain highly incriminating hearsay statements.

The prosecution offered the incriminating statements, not for their inherent truth, but to show the defendant's conduct in response thereto. The trial judge instructed the jury to regard the statements only for that limited purpose. The Wisconsin court of appeals reviewed the matter and found no error. The Wisconsin supreme court denied further appeal. Facially, the game was played according to the rules, but in my opinion a realistic appraisal establishes that the defendant's rights under the confrontation clause were acute-

ly violated and that he was denied a fair trial. The issues are of law, and therefore the presumption of correctness afforded the state court's finding under 28 U.S.C. § 2254(d) is not controlling.

Mr. Lee was convicted of first degree murder, party to a crime, for the 1985 killing of Booker Sparks. When Mr. Lee was arrested, he denied involvement in the murder. Later, that same day, Donald Williams was taken into custody and gave a statement, which was recorded, in which he said that he saw Mr. Lee commit the murder. The next day, the prosecutor, Mr. Cook, interviewed the petitioner. He told him of the Williams accusation and played the tape for Mr. Lee which had been made of the Williams statement. The interviews between Mr. Cook and Mr. Lee were also recorded. Mr. Cook made frequent references to the accusation of Mr. Lee by Donald Williams, and in response, Mr. Lee admitted that he was present at the time of the shooting but denied shooting Booker Sparks. Indeed, Mr. Lee then claimed that it was Donald Williams who shot Mr. Sparks.

At trial, the prosecution played before the jury the tape recordings of the interviews of Mr. Lee. The unedited tapes contained Mr. Cook's narration of Mr. Williams' accusations against Mr. Lee. No effort was made to establish Mr. Williams' unavailability or the reliability of the out of court statements.

Prior to the admission of the tapes, the following colloquy occurred:

MR. BURKE: ... At this point I'm asking to exclude those tape recorded conversations with Tony Lee made subsequent to the playing of the tape by Donald Williams. ... [t]he tapes would lead the jury to believe that Donald Williams made accusations against my client. By doing that he, in effect, becomes a witness against my client by inference—certainly if not in fact—and would deny to my client both his right to confrontation as well as violating rules against hearsay.... (Tr. p. 3)

....

THE COURT: Mr. Cook?

MR. COOK: Your Honor, I believe that the statements that were attributed to Mr. Williams which are on the tape are probably for all intents and purposes hearsay under the rules of evidence. The state clearly is not offering them for the truth of the matter. They are offering them to show the defendant's response.... (Tr. p. 4)

... I think the way to handle it, because it certainly has a potential for prejudicial effect, would be for the Court to give a curative instruction at the time that the tape is played and also at the end of the case during jury instructions, that any statements attributable to Donald Williams whatsoever are not to be considered as evidence under any circumstances of the truth of the matter and were just offered to show that those statements were made and that some subsequent statements were made in response by the defendant.... (Tr. p. 5)

THE COURT: All right. The Court has had the opportunity to hear the tapes— not Williams' tapes but the other tapes— and has seen the sequence of the tapes, and how Mr. Lee does his fast shuffle to change his story depending on what he is confronted with.... (Tr. pp. 5–6)

... There is a question whether or not it's hearsay. Yes, it is hearsay, but it's hearsay that is not offered for the truth of the statement but only offered to show what happened next. (Tr. p. 6)

The suggestion is I give an instruction. ... but it will be a general instruction about what hearsay is. Hearsay is something outside the court. And that statement is not made in Court, but it is not hearsay because it is only offered to show what happened next as opposed to some substantive evidence in this case.... (Tr. pp. 6–7)

....

MR. BURKE: ... I would suggest more strongly that the appropriate way to handle this would be for Mr. Cook to have Mr. Williams testify. (Tr. p. 7)

The jury was then called in and the prosecution proceeded to play the unedited tapes. During the first tape that was

played for the jury, the prosecutor, Mr. Cook, stated:

MR. COOK: Okay. Now you probably know, I think the officers told you, but Donald Williams said that he saw you shoot this fellow who was lying in the backyard. Do you know that?

. . . .

MR. LEE: Yeah, they told me that, but I didn't believe that.

MR. COOK: Well he said that he saw you pull out a gun, and walk with this fellow, and get out of a green car, and walk this this fellow, and go to the back yard area there where this guy ended up being found, and that you shot him?

MR. LEE: I don't know why he said that. (Tr. p. 32)

The tape being played for the jury then indicated that the recording was being stopped while Mr. Cook played another tape for Mr. Lee of Mr. Williams making his accusations. At that point, the defense counsel, Mr. Burke renewed his objection. The trial judge, then gave the following instruction to the jury:

THE COURT: All right, ladies and gentlemen, let me just say this. There is rules of hearsay. Hearsay is something said outside the Court that is not subject to cross-examination. There are some exceptions to that hearsay rule.

. . . .

If information is offered just to show what happened next, it is not hearsay. In other words, an example would be if an officer knocked on a door and said— asked somebody is Joe Blow here, and that somebody said, "Yes, he is." Now that would be hearsay if that person wasn't here that said Joe Blow was there. But it really is not important what that person says, it just shows us what the officer did next. And the officer went inside and saw John Blow. Do you get the idea?

It's a sequence of events. That is one thing that shows why hearsay may be offered, just to allow us to see what happened next. Okay.

Also you are not to take as substantive evidence the statement of Mr. Williams, because it is not here in Court. But it is offered to show you what happened next; okay? And not to take it as substantive evidence or as evidence that it actually happened.

All right, let's proceed. (Tr. 33–34)

The foregoing constituted the only curative instruction given by the trial judge regarding the tapes played for the jury and the narrated out of court statements by Mr. Williams.

After the instruction, Mr. Cook continued playing the rest of the tapes for the jury. During the remainder of the tapes, Mr. Cook repeated Mr. Williams' accusations six more times. On several occasions, Mr. Cook made comments in the presence of the jury which tended to treat the accusations of Mr. Williams as truthful. When asked by Mr. Lee why Mr. Williams would make such an accusation, Mr. Cook responded: "Why? Because he saw you do it. That's why." While responding to an allegation by Mr. Lee that Mr. Williams must have been tricked into making the accusation, Mr. Cook stated: "We didn't trick him into anything. We asked him to tell the truth, and that's what he told us." (Tr. p. 74). The prosecutor also embroidered the accusation of Mr. Williams with certain factual matters which the defendant had admitted. No distinction was made as to facts proved and the hearsay accusation:

MR. COOK: And you ended up with some .38 caliber spent bullets or casings in your pocket, your pants' pocket, and your jacket pocket. And it's clear that Donald Williams said that he saw you out there shooting. And it's clear that there is some tracks that led from your house over to where the body is and back to your house. . . . (Tr. p. 40)

During closing arguments, in the absence of a limiting instruction by the judge prior to charging the jury, the prosecutor made a final reference to the out of court accusation:

MR. COOK: And then on January 17, in the District Attorney's Office, again he is told that there is some information that implicates him, and he doesn't believe it.

Then he's played a tape in which there is an accusation made.

And as the Judge indicated that, that statement of Donald Williams is not to be construed as evidence. It is just an accusation. But I think it's important to show the defendant's response, and that is all it was offered for and nothing else. (Tr. Closing Argument, pp. 42–43)

But, then a few moments later, Mr. Cook, bolstered the credibility of the truth of the matter asserted in the accusation when he added: "... Donald Williams was there. There is no question Donald Williams was there when that murder was committed." (Tr. Closing Argument, p. 44) Finally referring to the "nonhearsay purpose" of showing the effect of the accusation on the accused, Mr. Cook told the jury: "You knew this man [Mr. Lee] was going to lie sooner or later when confronted with *evidence* that shows that he's responsible for this offense." (Tr. Closing Argument, pp. 44–45). The "evidence" that the prosecutor characterized as showing responsibility for the offense is the very out of court accusation that a few moments earlier he had told the jury not to consider as evidence.

█ The key issue presented is whether, under these facts, the admission of a directly incriminating out of court statement constitutes a violation of the confrontation clause when it is sponsored by the prosecuting attorney and ostensibly offered for the nonhearsay purpose of showing the effect it had on the accused.

The right to confront one's accusers is a fundamental right secured by the sixth amendment and made applicable to the states by the fourteenth amendment. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067–1068, 13 L.Ed.2d 923 (1965). The primary interest protected by the confrontation clause is the right of cross-examination. *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). "Although the Confrontation Clause and the hearsay rule are generally designed to protect similar values, they are not congruent and stand in some tension." *Burns v. Clusen,* 798 F.2d 931, 936 (7th Cir.1986). On a number of occasions, the courts have found violations of the confrontation clause, "even though the statements in issue were admitted under an arguably recognized hearsay exception." *California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1969); *United States v. King,* 613 F.2d 670, 673 (1980)

In *Douglas v. Alabama, supra,* the Supreme Court held that a prosecutor violated a defendant's right to confrontation by reading to the jury a purported confession of a co-perpetrator that incriminated the defendant under the guise of the "refreshing the recollection of the witness" exception to the hearsay rule, when that witness invoked the right against self-incrimination. The Court noted that although the prosecutor's reading of the witness' alleged statement and the witness' refusals to answer were technically not testimony, it nevertheless may have had the effect of testimony on the jury. *Douglas, supra,* 380 U.S. at 419, 85 S.Ct. at 1077. Because the statements may have had the effect of testimony on the jury, the defendant had the right to adversely test the truthfulness of the matter asserted in those statements. A significant difference between *Douglas* and the case at bar is that in *Douglas* the trial court did not issue a limiting instruction.

█ A limiting instruction that attempts to restrict the jury to consideration of only the admissible aspects of a hearsay statement, is insufficient to prevent a violation of the confrontation clause when the inadmissible aspect of the hearsay statement is "devastating to the defendant", and the declarant has a "recognized motivation to shift blame onto others." *Bruton v. United States,* 391 U.S. 123, 129–36, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1967); *see also Dutton v. Evans,* 400 U.S. 74, 87, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970); *United States v. Keplinger,* 776 F.2d 678, 695 (7th Cir.1985). In *Bruton* the Court noted that "[t]he government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law they should not consider but which, they cannot put out of their

minds." *Bruton, supra,* 391 U.S. at 129, 88 S.Ct. at 1624 (quoting *Delli Paoli v. U.S.,* 352 U.S. 232, 248, 77 S.Ct. 294, 303, 1 L.Ed.2d 278 (1956) (Frankfurter, J., dissenting)).

In the instant case, the out of court declaration by Donald Williams unequivocally put the finger on the defendant. If considered and believed by the jury, such testimony certainly must have ravaged the defendant. Further, the declarant, Donald Williams, made the statement while he was under arrest as a suspect for the very same crime. Thus, the declarant certainly qualifies as one with a recognized motivation for shifting the blame. These two aspects of the case at bar directly implicate both of the key factors that served as the foundation of the Court's reasoning in *Bruton.*

The scathing aspects of Mr. Williams' accusation against Mr. Lee are magnified by the fact that the prosecuting attorney repeated the accusation nine different times. This apparent sponsorship was further aggravated by the collateral commentary of the prosecutor which intertwined the accusation with factual evidence and thus implied that it was credible.

Was the trial judge's limiting instruction to the jury sufficient to protect Mr. Lee's sixth amendment rights? "In some instances, even the most carefully drafted limiting instructions directing the jury not to consider a statement for its truth will prove insufficient to protect a criminal defendant." *United States v. Wright,* 783 F.2d 1091, 1101 (D.C.Cir.1986). In this regard, the Supreme Court has stated:

> We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, [citation omitted], and a strong likelihood that the effect of the evidence would be "devastating" to the defendant, [citation omitted].

*Greer v. Miller,* 483 U.S. 756, 107 S.Ct. 3102, 3110, 97 L.Ed.2d 618 (1987).

The presumption that a jury will follow a limiting instruction "is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable accommodation of the interests of the state and the defendant in the criminal justice process." *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987).

In my opinion, the confrontation clause requires that, under the facts of the case at bar, the presumption that the jury followed the limiting instruction issued by the trial judge must be abandoned. Although the jury was asked to consider the out of court statements for a purpose other than the truth of the matter asserted in those statements, I hold that the nonhearsay purpose was an inferential step to prove the very truth of the matter asserted in those statements. In other words, the Williams accusation was used to show that the defendant's denial of the accusation was false, thereby tending to prove that the matter contained in the accusation was in fact true. The proximity of the inference sought by the purported nonhearsay purpose to the proof of the ultimate fact of guilt makes the separation into hearsay and nonhearsay purpose artificial and illusory. In this context, a limiting instruction is indeed a transparent wall.

It also bears note that these considerations are further aggravated by the inadequacy of the instruction actually given. The instruction was only given once by the court—at the time the tapes were played for the jury. It was not repeated at the close of the evidence when the jury received the judge's other instructions. Further, the instruction as evidenced by the trial judge's hypothetical did not take into account the degree of risk posed to the defendant's sixth amendment rights.

The respondent's reliance on *Tennessee v. Street,* 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985), is misplaced. In *Street,* the Supreme Court decided the issue of "whether [the defendant's] rights under the Confrontation Clause were violated by the introduction of the confession of an accomplice for the nonhearsay purpose of rebutting [the defendant's] testimony that his own confession was coercively derived

from the accomplice's statement." *Id.* at 410, 105 S.Ct. at 2080. In *Street* the defendant "opened the door" by alleging that his confession was coercively patterned after that of his accomplice; the defendant in effect made his accomplice's confession relevant to a factual question that he put at issue in the case. *Id.* at 416, 105 S.Ct. at 2082–2083. The case at bar does not present a situation in any way analogous to that in *Street.* Mr. Lee did not "open any doors."

Finally, it cannot be said that the wrongfully admitted hearsay testimony was "merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury." *Brown v. United States,* 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1972). The prosecutor's repeated narration of Mr. Williams' accusation was an error that was not harmless beyond a reasonable doubt. *Parker v. Randolph,* 442 U.S. 62, 71 n. 5, 99 S.Ct. 2132, 2138 n. 5, 60 L.Ed.2d 713 (1978); *Gaines v. Thieret,* 846 F.2d 402, 404 (7th Cir.1988). In fact, not only was the hearsay aspect of the testimony "devastating," but there was little other direct evidence. The state's case rested in large part on the testimony of an informer from the jail who testified that Mr. Lee told him that he committed the murder. No murder weapon was ever found; the state's forensic testimony established that neither the spent cartridges nor the bullets in the victim's body were fired from the weapons found in Mr. Lee's residence; and the swabs taken of Mr. Lee's hands were inconclusive in establishing that he had fired a hand gun at the time of the murder. In short, the state has failed to show that the error was harmless beyond a reasonable doubt.

Having concluded that the admission of the narrated out of court accusations violated Mr. Lee's sixth amendment right to confront a witness against him, the court must fashion appropriate relief "as law and justice require." 28 U.S.C. § 2243. The actual issuance of the writ will be delayed so as to allow the state a reasonable time in which to retry the petitioner if it elects so to do. *See Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 569, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971).

Therefore, IT IS ORDERED that Mr. Lee's petition for a writ of habeas corpus be and hereby is granted. The issuance of the writ is stayed for a period of seventy 70 days from the date of this order to enable the state to commence a retrial of the petitioner. If such retrial is actually commenced within that period, the issuance of the writ shall be permanently stayed.