**Tony Hanif LEE, Petitioner–Appellee,**

v.

**Gary McCAUGHTRY, Respondent–Appellant.**

No. 89–1382.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1989.

Decided Jan. 16, 1990.

Kenneth N. Flaxman (argued), Chicago, Ill., for Tony H. Lee.

Tony H. Lee, Waupun, Wis.

Sharon Ruhly, Asst. Atty. Gen. (argued), Office of Atty. Gen., Madison, Wis., for Darrell Kolb.

Before CUMMINGS, WOOD, Jr. and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

On January 31, 1986, a Wisconsin state-court jury found the petitioner-appellee Tony Hanif Lee guilty of one count of first degree murder, party to a crime, in violation of Wis.Stat. §§ 940.01 and 939.05. The state trial court denied post-conviction relief by written order entered December 1, 1986. The Wisconsin Court of Appeals affirmed the trial court's judgment and order, *State v. Lee*, No. 86–2289–CR (Wis.Ct. App. Sept. 30, 1987), and the Wisconsin Supreme Court denied Mr. Lee's petition for review of that decision. *State v. Lee*, 143 Wis.2d 911, 422 N.W.2d 860 (1988). Mr. Lee is now serving a life sentence at the Waupun Correctional Institution in Waupun, Wisconsin.

Mr. Lee filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin on May 12, 1988. On February 21, 1989, the district court filed its judgment granting the petition on the ground that petitioner's constitutional right to confrontation had been violated by the state trial court. For the following reasons, we now reverse that judgment and remand the case to the district court for further proceedings.

# I

## BACKGROUND

### A. *Procedural History*

On May 12, 1988, Mr. Lee filed a *pro se* petition for a writ of habeas corpus in the Eastern District of Wisconsin. The petitioner raised four grounds. On August 18, 1988, the district court concluded that Mr. Lee had failed to exhaust his state remedies with regard to two of the four grounds. The petitioner then was granted twenty days to amend his petition. On August 23, 1988, the petitioner filed an amended petition challenging his conviction on two grounds:[1] 1) that Mr. Lee's sixth amendment right of confrontation had been violated; and 2) that Mr. Lee's constitutional right to due process had been violated when the trial court excluded his corroborating defense witness.

On January 17, 1989, the district court issued an order that granted Mr. Lee's petition for a writ of habeas corpus.[2] The court concluded that Mr. Lee's right to confrontation had been violated by the admission of "a directly incriminating out of court statement ... sponsored by the prosecuting attorney and ostensibly offered for

---

1. State remedies had been exhausted with respect to these two issues.

2. Judgment was not entered immediately on the district court's January 17, 1989 order. On January 27, 1989, the then-acting superintendent of Waupun Correctional Institution filed with the district court a motion to reconsider, and on February 15, 1989, filed with the district court a notice of appeal. This appeal subsequently was dismissed by this court for lack of jurisdiction due to the pendency of the motion to reconsider. *Lee v. Kolb*, No. 89–1348 (7th Cir. March 24, 1989).

On February 20, 1989, the district court entered an order denying the respondent's January 27 motion to reconsider, *see Lee v. Kolb*, 707 F.Supp. 399 (E.D.Wis.1989), and on February 21, 1989, the district court entered judgment on its order granting Mr. Lee's writ of habeas corpus.

The district court stayed its judgment until March 28, 1989 on the condition that retrial commence during that period. However, rather than commence retrial, the state applied to this court for a further stay pending appeal. This court granted such a stay on March 27, 1989.

the nonhearsay purpose of showing the effect it had on the accused." *Lee v. Kolb,* 707 F.Supp. 394, 397 (E.D.Wis.1989). The district court did not dispose of Mr. Lee's second claim for relief: that Mr. Lee's due process rights had been violated when the trial court prohibited him from calling a collaborating witness. On February 24, 1989, the respondent filed a notice of appeal.

### B. Facts

#### 1. The Tapes

Mr. Lee was arrested and charged with first degree murder, party to a crime,[3] in connection with the January 16, 1985 shooting death of Booker Troy Sparks. When arrested, Mr. Lee denied involvement in the murder. Later the same evening, Mr. Lee's brother-in-law, Donald Williams, was taken into custody.[4] Williams gave a tape-recorded statement in which he said that he saw Mr. Lee commit the murder. The next day Mr. Cook, the state's attorney, interviewed Mr. Lee and told him of the accusations. In addition, the state's attorney played for Mr. Lee the audiotape of Williams' accusations. The interviews between the state's attorney and Mr. Lee also were tape-recorded, but Williams' earlier taped accusations were not re-recorded on these tapes. During his conversations with Mr. Lee, however, the prosecutor made frequent references to Williams' accusations, and these references by the prosecutor were included on the audiotapes. During these conversations, Mr. Lee at first continued to deny any knowledge of the murder. Later, and in response to the prosecutor's further questions, Mr. Lee admitted he was present, but denied shooting Sparks. Indeed, he claimed that Williams had shot Sparks.

At trial, the prosecution played for the jury, over the defendant's objection,[5] the five tapes of Mr. Lee's recorded interviews. These tapes, as we have already noted, included the state's attorney's narration of Williams' accusations against Mr. Lee, but did not include a replay of Williams' actual narration. The prosecution asserted that the tapes were being admitted not to prove the truth of Williams' accusations but to show the defendant's response—that first he denied being present at the scene of the crime, later admitted being present, and finally accused Williams of killing Sparks. The district court noted that no effort was made to establish Williams' unavailability or the reliability of the out-of-court statements. *Lee,* 707 F.Supp. at 395.

After the first of the five tapes had been played to the jury, the court gave the following limiting instruction:

> All right, ladies and gentlemen, let me just say this. This is rules of hearsay. Hearsay is something said outside the Court that is not subject to cross-examination. There are some exceptions to that hearsay rule.
>
> If information is offered just to show what happened next, it is not hearsay. In other words, an example would be if an officer knocked on a door and said—asked somebody is Joe Blow here, and that somebody said, "Yes, he is." Now that would be hearsay if that person wasn't here that said Joe Blow was there. But it really is not important what that person says, it just shows us what the officer did next. And the officer went inside and saw John Blow. Do you get the idea?

---

3. A person commits the offense of "Party to crime" by directly committing the crime, aiding and abetting the commission of the crime, or conspiring to commit the crime. Wis.Stat. § 939.05. In Wisconsin, a defendant may be charged and convicted of "first-degree murder, party to the crime" in violation of Wis.Stat. §§ 940.01 and 939.05. *See, e.g. State v. Stanton,* 106 Wis.2d 172, 316 N.W.2d 134 (Ct.App.1982).

4. When arrested, Mr. Williams appeared to have been drinking and had in his possession three individually wrapped packages of marijuana that were packaged in the same manner as drugs found on the decedent. *See infra* note 8.

5. Defendant's counsel objected on the ground that the jury would infer that "Donald Williams made accusations against" Mr. Lee. St.R.30 at 3. By such an inference, Williams "becomes a witness against [Mr. Lee] by inference—certainly if not in fact—and would deny to [Mr. Lee] both his right to confrontation as well as violating rules against hearsay." *Id.* at 3–4.

It's a sequence of events. That is one thing that shows why hearsay may be offered, just to allow us to see what happened next. Okay.

Also you are not to take as substantive evidence the statement of Mr. Williams, because it is not here in Court. But it is offered to show you what happened next; okay? And not to take it as substantive evidence or as evidence that it actually happened.

All right, let's proceed.

St.R.30 at 33–34.[6] This was the only cautionary instruction that was given by the trial judge regarding the audio-tapes. However, in his closing argument, the prosecutor made a final reference to the out-of-court accusation:

And as the Judge indicated[ ], that statement of Donald Williams is not to be construed as evidence. It is just an accusation. But I think it's important to show the defendant's response, and that is all it was offered for and nothing else.

St.R.31 at 42–43.[7]

2. Other Evidence

In addition to the tapes, other evidence was presented to the jury. A neighbor, Mr. Priem, testified that he heard what sounded like two firecrackers, looked in the backyard and saw a car in the alley and something on the ground. He also testified that he saw two men talking at the scene and that one drove away and the other walked away. The police officer who arrived at the scene approximately thirty minutes after the murder testified that he saw the body on the ground[8] and observed two sets of footprints approaching the body and one set of footprints leaving the body. The officer instructed his partner to follow the footprints leaving the body, and the footprints led to Mr. Lee's door. When Mr. Lee answered the door, the bottom of

his pants and boots were wet. After first denying that he had been outside, Mr. Lee said he had been out walking his dog. The officer responded that there were no dog tracks in the snow. Mr. Lee then said he had parked his car. When the officer noted that no cars were parked in the rear yard, Mr. Lee stated he had taken the garbage out. There were, however, no footprints found near the garbage.

When Mr. Lee was arrested, the officers found spent shells in his jacket and jeans pockets. A search of Mr. Lee's residence revealed an unloaded .38 caliber revolver and a small .22 caliber Derringer. A firearms expert testified that the spent shells and the bullets recovered from Sparks' body were not fired from either of the guns. No live or spent ammunition was found in the house. Additional evidence was presented by Billy Bonds, a friend of the decedent. He testified that he saw Sparks earlier on the day of the murder and that Sparks had shown him a .38 caliber gun. Sparks' girlfriend, Shirley Baker, testified that the gun found in Mr. Lee's home was Sparks' gun.

The state also introduced the testimony of William Helmke, a fellow inmate, who said that Mr. Lee had confessed to him. Helmke related that Mr. Lee said that he was angry at Williams because Mr. Lee had killed Sparks for Williams and now Williams was putting the blame on Mr. Lee. Williams had sold Sparks some cocaine that had been diluted. Mr. Lee was angry because it was his cocaine that Williams had sold. Earlier in the day Sparks had come to Mr. Lee's house with a gun and Mr. Lee had replaced the cocaine. Mr. Lee discovered that the replacement was diluted, and that it was Williams who had diluted the cocaine. According to Helmke, later in the evening of January 16,

---

6. The state record that was sent to this court for the habeas appeal will be referred to as St.R.

7. Although the prosecutor made this statement, a few minutes later, he also said "Donald Williams was there when that murder was committed," St.R.31 at 44, and "[y]ou knew this man [Lee] was going to lie sooner or later when

confronted with evidence that shows that he's responsible for this offense." *Id.* at 44–45.

8. The victim had a "nickel bag" of marijuana in his closed right hand. The ends of the plastic bag had been melted to seal the bag. On the evening of the murder an officer stopped Mr. Williams and searched him. The search revealed three bags wrapped in the same fashion.

Mr. Lee saw Williams and Sparks arguing. Mr. Lee got his .38 caliber gun and went to the scene of the argument. Mr. Lee then pulled his gun and shot Sparks twice in the head and twice in the chest. Mr. Lee told Williams to get rid of the car. The police never found the murder weapon because Mr. Lee's girlfriend, Peaches, had the gun.

Helmke was in prison for armed burglary. The jury was informed that, in exchange for his testimony, the prosecutor had agreed to recommend straight probation on the armed burglary charge, had agreed to a cash bail and agreed to advise other counties with pending charges that Helmke had cooperated.

Finally, Mr. Lee testified on his own behalf. He stated that he had not known Sparks and denied having killed him. On January 16, Williams had called Mr. Lee to offer him a ride to his girlfriend's house. Shortly after the call, Mr. Lee saw a car in the back of his residence. As he was going outside, he overheard an argument between Williams and Sparks. He also saw a bag of marijuana. Williams and Sparks started to scuffle and both went for their pockets. Williams' hand came out first, and he shot Sparks. Mr. Lee testified that he was startled. Williams told Mr. Lee to get into the car but Mr. Lee refused. Williams then gave Mr. Lee a pistol and some shells and directed him to take them into the house. Williams drove off in the car, and Mr. Lee hid the gun and shells. Mr. Lee testified that, because of his criminal record, he feared the police and lied to them about what had happened.

The jury found Mr. Lee guilty, and his conviction was affirmed on direct appeal in the state courts.

## C. *District Court Opinion on Habeas Review*

The district court characterized the issue before it as follows:

The prosecution offered the incriminating statements, not for their inherent truth, but to show the defendant's conduct in response thereto. The trial judge instructed the jury to regard the statements only for that limited purpose. The Wisconsin court of appeals reviewed the matter and found no error. The Wisconsin supreme court denied further appeal. Facially, the game was played according to the rules, but in my opinion a realistic appraisal establishes that the defendant's rights under the confrontation clause were acutely violated and that he was denied a fair trial.

707 F.Supp. at 394–95.

In reaching this conclusion, the district court focused on several factors. It pointed out that, on the tape, the prosecutor repeated Williams' accusations nine different times. *Id.* at 398. The court also noted that, on several occasions, the prosecutor had made comments on the tape that tended to treat Williams' accusations as truthful. When asked by Mr. Lee why Williams would make such an accusation, the prosecutor responded: " 'Why? Because he saw you do it. That's why.' " While responding to an allegation that Williams must have been tricked into making the accusations, the prosecutor stated: " 'We didn't trick him into doing anything. We asked him to tell the truth and that is what he told us.' " *Id.* at 396. In the district court's view, the prosecutor also "embroidered the accusation of Mr. Williams with certain factual matters which the defendant had admitted." *Id.* No distinction was made as to facts proved and the hearsay accusation:

MR. COOK: And you ended up with some .38 caliber spent bullets or casings in your pocket, your pants' pocket, and your jacket pocket. And it's clear that Donald Williams said that he saw you out there shooting. And it's clear that there is some tracks that led from your house over to where the body is and back to your house.... (Tr. p. 40).

*Id.* Finally, the district court evaluated the prosecutor's admonition to the jury in closing argument that the "statement of Donald Williams is not to be construed as evidence:"

But, then a few moments later, Mr. Cook, bolstered the credibility of the truth of the matter asserted in the accusation when he added: "... Donald

Williams was there. There is no question Donald Williams was there when that murder was committed." (Tr. Closing Argument, p. 44) Finally referring to the "nonhearsay purpose" of showing the effect of the accusation on the accused, Mr. Cook told the jury: "You knew this man [Mr. Lee] was going to lie sooner or later when confronted with *evidence* that shows that he's responsible for this offense." (Tr. Closing Argument, p. 44–45). The "evidence" that the prosecutor characterized as showing responsibility for the offense is the very out of court accusation that a few moments earlier he had told the jury not to consider as evidence.

*Id.* at 397 (emphasis in original).

The district court acknowledged that, as a general rule, statements not admitted for the truth of the matter asserted do not implicate the confrontation clause. *See Tennessee v. Street,* 471 U.S. 409, 413–14, 105 S.Ct. 2078, 2081–82, 85 L.Ed.2d 425 (1985). The district court also acknowledged the presumption that a jury will follow a limiting instruction. *See Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987). However, in the district court's view, neither of these general rules ought to be applied here. The court noted that, in *Street,* the defendant had "opened the door" by alleging that his confession had been coercively patterned after that of his accomplice. The *Street* defendant, in effect, made the accomplice's confession relevant to a factual question that he had put into issue. In the district court's view, "Mr. Lee did not 'open any doors.'" 707 F.Supp. at 399.

With respect to the presumption that a jury will follow a limiting instruction, the district court nevertheless concluded that no such presumption applied in this case because the instruction was inadequate. It had been given only once—during the playing of the tapes—and was not repeated at the close of evidence. 707 F.Supp. at 398. Moreover,

the nonhearsay purpose was an inferential step to prove the very truth of the matter asserted in those statements. In other words, the Williams accusation was used to show that the defendant's denial of the accusation was false, thereby tending to prove that the matter contained in the accusation was in fact true. The proximity of the inference sought by the purported nonhearsay purpose to the proof of the ultimate fact of guilt makes the separation into hearsay and nonhearsay purpose artificial and illusory. In this context, a limiting instruction is indeed a transparent wall.

*Id.*

In addition, noted the district court, the wrongfully admitted hearsay was not merely cumulative of other overwhelming and uncontroverted evidence properly before the jury. *Id.* at 399. The court concluded that the introduction of the tapes had violated Mr. Lee's rights under the confrontation clause and was not harmless error. Consequently, it granted Mr. Lee's request for habeas relief.

## II

### ANALYSIS

We approach our evaluation of this case with great caution and great respect for the judgment under review. Our caution is engendered by the fundamental role that the confrontation clause plays in our criminal justice system. Its guarantee directly affects the truth-finding process of the criminal trial. Our respect is grounded in our realization that, at bottom, this case involves a particularized evaluation of a trial record—a process already painstakingly undertaken by an experienced trial judge in the district court.

### A.

We begin by setting forth the basic principles of law that govern our inquiry. The sixth amendment's confrontation clause, made applicable to the states through the fourteenth amendment,[9] "requires that 'in

---

9. *See Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974); *Pointer v.*

all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.' " *Mattes v. Gagnon,* 700 F.2d 1096, 1101 (7th Cir.1983) (quoting U.S. Const. amend. VI); *see Kentucky v. Stincer,* 482 U.S. 730, 737, 107 S.Ct. 2658, 2663, 96 L.Ed.2d 631 (1987). The confrontation clause "embodies the Framers' preference for face-to-face confrontation of witness and accused in the criminal trial." *Sahagian v. Murphy,* 871 F.2d 714, 715 (7th Cir.1989). The decisions of the Supreme Court "make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' " *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (quoting *California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970)); *see also Mattes,* 700 F.2d at 1101 (if witness is present false statements are less likely due to solemnity of trial and declarant's presence before accused); *cf. Barber v. Page,* 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968) (primary purpose of the confrontation clause is to prevent the use of *ex parte* affidavits or depositions against a prisoner in lieu of a personal examination and cross-examination of a witness); *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895) (same).

The " ' "hearsay rules and the Confrontation Clause are generally designed to protect similar values," *California v. Green,* *Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

399 U.S. [149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970) ], and "stem from the same roots," *Dutton v. Evans,* 400 U.S. 74, 86 [91 S.Ct. 210, 218, 27 L.Ed.2d 213] (1970).' " *Bourjaily v. United States,* 483 U.S. 171, 182–83 [107 S.Ct. 2775, 2782–83, 97 L.Ed.2d 144] (1987) (quoting *Ohio v. Roberts,* 448 U.S. 56, 66 [100 S.Ct. 2531, 2539, 65 L.Ed.2d 597] (1980)). Nevertheless, they "are not congruent." *Burns v. Clusen,* 798 F.2d 931, 936 (7th Cir.1986). Violations of the confrontation clause have been found "even though the statements in issue were admitted under an arguably recognized hearsay exception." *Green,* 399 U.S. at 156, 90 S.Ct. at 1934.

**B.**

 We now turn to an assessment of the case before us. We begin at a point where there is no disagreement between us and the district court. "If ... an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the hearsay rule does not apply." 6 J.H. Wigmore, Evidence § 1766, at 250 (1976) (emphasis in original); *cf. United States v. Lazcano,* 881 F.2d 402, 407 (7th Cir.1989) (hearsay rule inapplicable if statement offered not to prove truth of assertion but only context of criminal investigation). It is well established that statements introduced merely to give the context of the defendant's statements are not hearsay. *See United States v. Davis,* 890 F.2d 1373, 1380 (7th Cir.1989).[10] In this case, the trial court admitted these

10. *See also United States v. Gutierrez–Chavez,* 842 F.2d 77, 81 (5th Cir.1988) (statements on tape recording admissible "for the limited purpose of putting the responses of the appellant in context and making them 'intelligible to the jury and recognizable as admissions' ") (quoting *United States v. Lemonakis,* 485 F.2d 941, 948 (D.C.Cir.1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974)); *United States v. Jordan,* 810 F.2d 262, 264 (D.C.Cir.) (statements on tape recording not hearsay, because they were introduced to show context of appellant's responses), *cert. denied,* 481 U.S. 1032, 107 S.Ct. 1963, 95 L.Ed.2d 535 (1987); *United States*

*v. Price,* 792 F.2d 994, 997 (11th Cir.1986) (statements admitted "to make understandable to the jury the statements made by" the defendant, and not for truth); *United States v. Whitman,* 771 F.2d 1348, 1352 (9th Cir.1985) (no hearsay problem when tape recorded statements introduced to aid jury in understanding defendant's statements); *United States v. Leake,* 642 F.2d 715, 720 n. 6 (4th Cir.1981) (statements "were admissible ... as necessary to explain the context in which [the defendant] made the statements revealing his state of mind"); *United States v. Williams,* 604 F.2d 1102, 1118 (8th Cir.1979) ("the tape-recorded conversation was not hearsay because it was admitted to provide a context for [the defendant's] end of the conversation").

taped statements made by the district attorney because they were not introduced for the truth of the matter asserted but instead "offered to show what happened next." St.R.30 at 6.

The purpose of the prosecutor's recital of Williams' statements on the tape was to place into context for the jury the metamorphosis of Mr. Lee's accounts of events that took place at the murder scene. The petitioner's story has three distinct phases. In Phase I, on the January 17 tapes,[11] petitioner claims that he was in his room when he heard the gunshots, that he went to look at the body and then returned to his house, that there were no shell casings in his pants, and that Williams was not at the house. In Phase II, on the January 18 morning tapes, petitioner claims that he came out of his house to meet Williams at the car, that he was at the car when Williams shot the decedent, that Williams did not give him a gun, and that, although he did have shell casings in his pants pocket, the casings had been there since New Years Day. In Phase III, on the January 18 afternoon tape, petitioner claims that Williams gave him a gun immediately after the shooting, and that Williams gave him the shell casings that were found in his pocket.

Since the prosecutor's account of Williams' statements were offered not for the truth of those statements, but to explain the context of the defendant's change in his story, they are not hearsay, and, absent complicating circumstances, would not have violated the confrontation clause. *See Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 2081, 85 L.Ed.2d 425 (1985). Therefore, we must determine whether, despite the nonhearsay character of the statements, there are complicating circumstances that raise confrontation clause problems.

C.

The district court held that, despite the nonhearsay character of the taped conversations, their admission constituted a confrontation clause violation for two reasons: 1) the inadequacy of the cautionary instruction; and 2) the exploitation of the material by the prosecutor asserting the truth of the statements attributed to Williams. We shall address each of these matters.

1. Limiting Instruction

██ At the time of the admission of the evidence, the trial court instructed the jury not to use any evidence of Williams' allegations as evidence of the truth of these accusations. Absent extreme circumstances, "[t]he Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instruction given them." *Francis v. Franklin*, 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985); *see also Richardson v. Marsh*, 481 U.S. 200, 206–07, 107 S.Ct. 1702, 1706–07, 95 L.Ed.2d 176 (1987); *United States v. Davis*, 890 F.2d 1373, 1380 (7th Cir.1989).[12]

---

**11.** There were two tapes for January 17. The first tape was an interview conducted before the playing of Williams' accusatory tape. The second tape continues the interview immediately after Williams' tape was played.

**12.** We do not believe this case is controlled by the "narrow exception," *Richardson v. Marsh*, 481 U.S. 200, 208, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987), to this rule established in *Bruton v. United States*, 391 U.S. 123, 135–36, 88 S.Ct. 1620, 1627–28, 20 L.Ed.2d 476 (1968). In *Bruton*, the two defendants, Bruton and Evans, were tried together for armed robbery. At their trial a witness testified that Evans had confessed that he and Bruton had committed the robbery. The trial court held that this testimony, though hearsay, was admissible against Evans as an admission against interest, but instructed the

jury not to consider the testimony against Bruton. The Supreme Court held that Bruton's confrontation right had been violated because he could not cross-examine the speaker of the hearsay (his co-defendant), and because the statement was "devastating" to Bruton's defense. 391 U.S. at 136, 88 S.Ct. at 1628.

In *Gaines v. Thieret*, 846 F.2d 402, 404 (7th Cir.1988), we doubted in dicta whether the *Bruton* rule was applicable to cases where an accusation rather than an implicating confession is brought before the court. We stated that, "[t]o the extent that the rule of the *Bruton* case is based on concern that the jury will give special weight to a confession, the concern is absent here and weakens the argument for applying the rule." *Id.* Furthermore, in this case a juror would not have to perform the task of using a

While the court did not repeat this admonition at the conclusion of the trial, it does not appear that either party requested such an instruction at that time. It is highly significant, however, that, during his closing argument, the prosecutor specifically pointed out to the jury that Williams' accusations were to be used only to show the context of the interview, and not for the truth of the accusations. Moreover, our review of the record also makes it quite clear that the basic thrust of the prosecutor's argument was consonant with the limitations placed on the use of the audiotapes by the trial judge at the time of their admission. When evaluated in the context of the prosecutor's overall presentation to the jury, the remarks found objectionable by the district court cannot be characterized as invitations to consider the truth of the matter asserted by Williams in the taped statements.[13] The limiting instruction given by the trial judge is "the appropriate way to limit the jury's use of that evidence in a manner consistent with the Confrontation Clause," *Street,* 471 U.S. at 417, 105 S.Ct. at 2083, when the "jury's attention was directed to this distinctive and limited purpose by the prosecutor's ... closing argument." *Id.*

### 2. Misuse of Limited Admission by Prosecutor

■ The shield allowing the prosecution to use nonhearsay may be destroyed if the prosecutor misuses the statement. The Supreme Court in *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), initially determined that use of a redacted statement made by a nontestifying codefendant did not create a confrontation clause violation. The trial court had

given a limiting instruction to the jury to use the statement only against the codefendant. While the Court approved this use of the statement, the Court remanded the case because of the prosecutor's subsequent improper use of the testimony. "[T]he prosecutor sought to undo the effect of the limiting instruction by urging the jury to use [the codefendant's] confession in evaluating respondent's case." *Id.* at 211, 107 S.Ct. at 1709; *see also United States v. Sherlock,* 865 F.2d 1069, 1080 (9th Cir.1989) (constitutional error where prosecutor "flouted the limiting instruction" and used statement for its truth against defendant).

■ When asked by Mr. Lee why Williams would make such an accusation, the prosecutor responded: "Why? Because he saw you do it, that's why." St. R.30 at 38. Later, the following exchange took place:

Lee: I told [Williams], man you got to straighten that stuff out. Man, you know, you didn't have to do that. He tells me that you all tricked him into saying that. And I said man, can't nobody trick you into saying—

Cook: We didn't trick him into anything. What did he say? How did we trick him? We didn't trick him into anything. We asked him to tell the truth, and that's what he told us.

Lee: This is what he told me, that you all tricked him. So I told him, I said man, you got to get it straight.

St.R.30 at 73–74.

While a more restrained approach on the part of the prosecutor would have been prudent, we cannot say that these incidents

---

statement as substantive evidence against one defendant but not against the other, because the statements were not to be used as substantive evidence under any circumstance.

13. For instance, the prosecutor's remark that "[t]here is no question Donald Williams was there when that murder was committed"—a fact clearly in evidence through Mr. Lee's own testimony—was offered to explain why Mr. Lee altered his statement to put the blame on

Williams for the murder. The prosecutor suggested to the jury that Mr. Lee, knowing that Williams had been at the murder scene and was now accusing Mr. Lee of the crime, decided to "turn the tables" on Williams and claim that he had seen Williams commit the crime. As the prosecutor argued to the jury: it was "[o]ne of the oldest tricks in the book in that situation, putting the blame on someone else." St.R.31 at 44.

are comparable to the abuses condemned as constitutionally infirm in *Richardson* or in *Douglas v. Alabama*, 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934 (1965) (prosecutor's reading into evidence of co-perpetrator's confession despite co-perpetrator's refusal to testify violated defendant's confrontation right). Moreover, in both instances, Mr. Lee opened the door to the prosecutor's retort. Indeed, in the second instance, he accused the police of "tricking" Williams into making the allegations and challenged the state's attorney to defend the integrity of the police investigation. *Cf. Street,* 471 U.S. at 417, 105 S.Ct. at 2083 (co-perpetrator's confession properly admitted for purpose of disputing defendant's claim that his confession was a coerced copy). In any event, when these remarks are evaluated in light of the full interrogation, there is no realistic chance, in our view, that the cautionary instruction of the trial court was diluted.

Because of the nonhearsay nature of the evidence, the limiting instruction, and our determination that the prosecutor did not "undo the effect of the limiting instruction," *Richardson,* 481 U.S. at 211, 107 S.Ct. at 1709, we hold, in respectful disagreement with the district court, that the district court erred in finding a violation of Mr. Lee's right to confront witnesses against him.

### D.

Mr. Lee also raised a due process claim in his petition for habeas corpus. The district court granted Mr. Lee's petition for habeas corpus solely on the basis of his confrontation clause claim, and did not reach this due process claim. We therefore remand this case to the district court for further proceedings on Mr. Lee's due process claim. We express no opinion on the merits of this claim.

Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings.

REVERSED AND REMANDED