RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0367p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
—————————————

DENNIS GOVER,

    *Petitioner-Appellant,*

  *v.*

MITCH PERRY,

    *Respondent-Appellee.*

No. 10-2198

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:06-cv-15184—Stephen J. Murphy III, District Judge.

Argued: July 19, 2012

Decided and Filed: October 23, 2012

Before: SILER and MOORE, Circuit Judges; VAN TATENHOVE, District Judge.[*]

—————————————

## COUNSEL

**ARGUED:** James S. Lawrence, Royal Oak, Michigan, for Appellant. Andrea M. Christensen, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** James S. Lawrence, Royal Oak, Michigan, for Appellant. Andrea M. Christensen, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

—————————————

## OPINION

—————————————

  VAN TATENHOVE, District Judge. Over fifteen years ago, Dennis Gover was convicted of second-degree murder of a nine-year-old girl caught in the cross-fire of a Detroit neighborhood. Since that time he has unsuccessfully sought to overturn his

_____

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

conviction in Michigan courts and now in federal court by way of a petition for habeas corpus.  Gover maintains that the fatal error in his conviction is the admissibility of two statements made by two police officers.  This evidence, he maintains, violates his constitutional right to confront the witnesses marshaled against him.

As explained below, one of these statements raises no constitutional problem.  The other does; but it is not fatal.  Instead, it is harmless, a conclusion reached by the district court on its own, sua sponte.  We hold that this court and district courts reviewing habeas petitions have discretion to consider harmlessness sua sponte when reviewing for constitutional error.  Hence, we AFFIRM.

## I.

On October 29, 1994, a number of people including the petitioner Dennis Gover, congregated at the home of Wanda Ratliff and Sharon Hunter on Lannette Street in Detroit.  It was generally known that Ratliff and Hunter sold marijuana out of the home.  The assembled parties were discussing a robbery that occurred at the Lannette house the previous night and what should be done about it.  Ratliff believed the robbery was the work of an individual named "Ricky," and it was determined that Ricky and the stolen items could be found at a home nearby on Rosemary Avenue.

Shortly before 2:30 p.m., Ratliff and Hunter, two white women, got in the front seat of a two-tone vehicle while two black males got in the backseat.  At trial, there was testimony from multiple individuals that the two individuals in the backseat were Robert Catchings and the petitioner, Dennis Gover.  Gover was alleged to have been sitting on the passenger side.  After leaving the Lannette house, the car traveled to the Rosemary house where another group of people were sitting on the porch.  While still in the car, one of the women in the front seat asked those sitting on the porch where "Rick" was.  Someone on the porch said that Rick was not there.

The car slowly began to pull away before a gun was pointed outside the rear passenger window, where Gover was alleged to be sitting, and began firing at the house.  One individual, Dushawn Salter, was struck by a bullet in the back while another, Leon

Kennedy, was shot in the foot. Neither injury was fatal. At the same time, and at a nearby home on Rosemary Avenue, nine-year-old Michelle Warfield was playing outside. One of the bullets fired from the car struck Warfield who was pronounced dead upon arrival at the local hospital.

Following the shooting, the suspected assailants drove the car quickly back to the Lannette house where some of the individuals who had been there prior to the car's departure moments earlier were still waiting. At trial, one of those individuals testified that Gover said that he shot at the Rosemary house because someone had laughed at him, while another testified that he had heard Gover say that the people laughed at him, that he hoped he killed one of them, and that he emptied his gun in the direction of the home. Once Gover and the others were inside the home, the Lannette house was fired upon by unknown assailants.

Shortly thereafter, Officer Johnson and his partner, both of the Detroit Police Department, heard a description over their radio of the vehicle that had fired upon the Rosemary house. They identified the car in the Lannette house's driveway as matching the description. Further, the radio report stated that two white females were in the front seat of the vehicle at the time of the shooting. As a result, Officer Johnson detained Hunter and Ratliff in the backseat of his police cruiser and advised them of their rights. While in the backseat of the cruiser, Ratliff stated that while they were driving their car, the two black males in the backseat began firing. At Gover's trial, Officer Johnson testified to Ratliff's statement. This statement, and its admission, forms the basis of the first of Gover's two Confrontation Clause challenges.

At roughly the same time, Officer Jamison arrived at the scene of the shooting on Rosemary Avenue and began interviewing some of the people there. The parties disagree as to exactly what was occurring when Officer Jamison arrived. At trial, Officer Jamison testified both to what he observed after arriving and what those he interviewed told him about the shooting. Officer Jamison's testimony concerning what the witnesses told him is the second piece of challenged testimony at issue now.

At the conclusion of the trial, the jury returned guilty verdicts on charges of second-degree murder, assault with intent to commit murder, discharge of a firearm at a dwelling, and a felony firearm charge. In addition to shorter sentences on the less serious charges, Gover was sentenced to 60-100 years for second-degree murder.[1]

Gover spent the next ten years unsuccessfully appealing and challenging the trial court's various decisions in Michigan's courts. In 1999, his initial appeal was considered by the Michigan Court of Appeals which rejected each of his arguments and upheld the conviction and sentence. The Michigan Supreme Court declined to hear Gover's appeal. He then sought relief from judgment in the trial court in 2001 but was unsuccessful. The Michigan Court of Appeals declined to consider the appeal from that decision.

Gover then turned to the federal courts and filed a 28 U.S.C. § 2254 habeas petition in the Eastern District of Michigan in 2006. The district court[2] made two findings that are the subject of the current challenge. First, the district court held that while its introduction at trial was a violation of Gover's Sixth Amendment rights, Officer Johnson's testimony relaying Ratliff's statement made while in the back of the car was harmless. Gover challenges both the conclusion that the introduction of Ratliff's statements through Officer Johnson's testimony was harmless, and the district court's ability to reach such a conclusion given Warden Perry's failure to argue the lack of prejudice at the district court. Gover argues that Perry waived this argument. Second, Gover challenges the district court's holding that the introduction of Officer Jamison's testimony concerning what witnesses told him after his arrival on the scene of the shooting did not violate the Sixth Amendment.

---

[1]Gover was later re-sentenced for reasons not relevant to this petition to a term of 20-45 years for the second-degree murder conviction.

[2]The district court adopted the Recommended Disposition of the Magistrate Judge that provided much of the analysis on each of these issues.

**II.**

The first alleged Confrontation Clause violation occurred when the trial court allowed Officer Johnson to testify as to the content of Ratliff's statement.  While the Michigan Court of Appeals determined that the admission was not a violation of Gover's right to confrontation, the district court disagreed.  Specifically, the district court held that the Michigan Court of Appeals' holding was an unreasonable application of federal law in that the "statement against interest" hearsay exception was not a "firmly rooted" exception under *Ohio v. Roberts*, 448 U.S. 56 (1980), the clearly established federal law at the time.  Nevertheless, the district court denied the petition after reaching and deciding the issue of harmlessness, sua sponte.  On appeal, Gover makes two arguments concerning harmlessness.[3]  First, he argues that Perry's failure to raise harmlessness at the district court mandates issuance of the writ.  Second, Gover appeals the district court's legal conclusion that the admission was harmless.

**A.**

Generally, habeas petitioners are not entitled to relief based on a constitutional error at trial unless "they can establish that it resulted in 'actual prejudice.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citing *United States v. Lane*, 474 U.S. 438, 449 (1986)); *see Fry v. Pliler*, 551 U.S. 112, 121 (2007) (stating that the *Brecht* standard of review is still applicable post-AEDPA).  Actual prejudice is present when the "error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  The district court, sua sponte, found that the admission of Ratliff's statement was harmless and that Gover had suffered no actual prejudice due to its admittance at trial. Gover argues that it was error for the district court to consider harmlessness sua sponte.  We disagree.

---

[3]Perry waived the argument that a technical Confrontation Clause violation occurred. In his brief, Perry fails to contest the district court's finding of a violation of *Ohio v. Roberts*, the law at the time of the Michigan Court of Appeals' ruling, instead focusing entirely on harmlessness.

The Sixth Circuit has not discussed in detail the circumstances in which it is appropriate for this court to exercise its discretion in raising harmlessness sua sponte. *See Miller v. Stovall*, 608 F.3d 913, 927 (6th Cir. 2010) ("[T]he State urges us to conduct harmless-error review sua sponte. We have no obligation in this regard *but may do so in our discretion*.") (emphasis added) (citing *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004)), *vacated on other grounds*, 123 S. Ct. 573 (2011). In a leading opinion cited across numerous circuits, the Seventh Circuit held that as a court of appeals, it has "discretion to overlook a failure to argue harmlessness." *United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir. 1991). As the *Giovannetti* court noted, "reversal may be an excessive sanction for the government's having failed to argue harmless error, at least if the harmlessness of the error is readily discernible without an elaborate search of the record." *Id.* at 227. If failure to argue harmlessness mandated the issuance of a writ even when only a minor obviously harmless constitutional violation occurred, then "innocent third parties, in particular other users of the court system, whose access to that system is impaired by additional litigation" would also be harmed. *Id.* at 226. Further, "[i]f it is certain that the error did not affect the outcome, reversal will not help the party arguing for reversal beyond such undeserved benefits as he may derive from delay." *Id.*

Relying on such considerations, the *Giovannetti* court provided three factors a circuit court should consider when determining whether it is appropriate to utilize its discretion and consider harmlessness sua sponte: "the length and complexity of the record, whether the harmlessness of the error or errors found is certain or debatable, and whether a reversal will result in protracted, costly, and ultimately futile proceedings in the district court." *Id.* at 227.

These principled reasons were cited with approval by the D.C. Circuit in *United States v. Pryce*, where that court added that "[o]nly if one adopts an absolutist approach to the adversary system can one contend that courts must *never* address unargued issues, no matter how obvious their proper resolution may be." 938 F.2d 1343, 1348 (D.C. Cir. 1991) (agreeing "with the general approach of *Giovannetti*"). In addition, the Eighth, Tenth, and First Circuits consider it proper for a circuit court to consider harmlessness

sua sponte in some situations and endorsed the *Giovannetti* factors as appropriate considerations for a court when it decides whether to do so. *United States v. Torrez-Ortega*, 184 F.3d 1128, 1136 (10th Cir. 1999) ("We now conclude that the factors enumerated in *Giovannetti* are relevant to a decision to exercise such discretion."); *United States v. Rose*, 104 F.3d 1408, 1415 (1st Cir. 1997) ("While we find helpful the reasoning of the Seventh Circuit, we do not restrict ourselves to the *Giovannetti* test [because] [t]he exercise of discretion involves the balancing of many elements."); *Lufkins v. Leapley*, 965 F.2d 1477, 1481 (8th Cir. 1992).

Before ultimately adopting the *Giovannetti* court's approach, the Ninth Circuit identified some of the dangers of allowing sua sponte consideration of harmlessness. These include the potential burden on reviewing courts of searching the record without guidance from the parties and encouragement of sloppy practice by lawyers. Ultimately, the Ninth Circuit found these concerns lacking when compared to the justifications for allowing such review, reasoning that it made sense to allow sua sponte review in some cases because "of the potential costs to third parties and to the system brought about by needless relitigation of cases in which the error did not make any difference." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1100 (9th Cir. 2005).

We find the analysis and reasoning of our sister circuits persuasive. It is both highly inefficient and  costly to burden state courts with duplicative proceedings when there is no doubt as to the ultimate result. This is especially true when one considers that the adoption of such a test does not mandate that a circuit court review the record before it for harmlessness in every instance, only that it has discretion to do so when the error is harmless upon review of a clear record. Thus, we hold that this court has discretion to consider harmlessness sua sponte when reviewing for constitutional error. Further, a court should consider the *Giovannetti* factors when deciding whether to exercise its discretion; however, the determination is not limited to those factors alone. We note that raising harmless error sua sponte is appropriate in very limited circumstances and courts should proceed cautiously when doing so.

The district court also may sua sponte exercise its discretion in raising harmlessness when reviewing habeas petitions. In deciding to exercise its discretion, the district court too should look to the *Giovannetti* factors because it is perfectly able to consider "the length and complexity of the record, whether the harmlessness of the error or errors found is certain or debatable, and whether a reversal will result in protracted, costly, and ultimately futile proceedings." *Giovannetti*, 928 F.2d at 227. Thus, we hold that a district court may exercise discretion to review constitutional errors for harmlessness sua sponte when reviewing a § 2254 petition and when a court determines whether to do so, it should utilize the *Giovannetti* factors among other relevant considerations.

Having concluded that district courts have discretion to consider harmlessness sua sponte in the habeas context, this court must review the district court's exercise of its discretion in raising harmlessness despite Perry's waiver. While the district court did not explicitly state that it was applying the *Giovannetti* factors, it did analyze the obviousness of how harmless the error was when reading the record before it. The district court reviewed the weight of Ratliff's statement introduced through Officer Johnson and compared it to the amount of other testimony that stated the same thing, that two black individuals were in the backseat of the car and that they fired on the house, before concluding that the relevant testimony was cumulative and its introduction was harmless. The district court's decision to conduct this analysis and raise harmlessness sua sponte was not an abuse of its discretion.

Although the district court did not abuse its discretion in raising harmlessness sua sponte, we must review de novo the district court's conclusion that any constitutional error was harmless.

**B.**

As stated above, even though the district court determined that the error was harmless, the question is one this court reviews *de novo*. *Souter v. Jones*, 395 F.3d 577, 584 (6th Cir. 2005) ("This court applies de novo review to the decision of the district court in a habeas corpus [petition] proceeding"). The challenged portion of Officer

Johnson's testimony is very brief.  The extent of Officer Johnson's relevant testimony is as follows:

> Q       And what is it that you recall them saying?
>                   . . .
> A       The, one of the white females, her name was Wanda.  She told us that they drove over to Rosemary Street.  And she said at that point, that the two black males in the car began firing shots out of the window.
> Q       Okay.  Did she, at that point and time, indicate who the two black males were?
> A       No.

[district court docket number ("R.") 11, Exhibit ("Ex.") 11 at 72].

His testimony could fairly be characterized as advancing two propositions.  The first is that there were two black males in the backseat of the car with Ratliff.  The second is that these black individuals fired shots out of the window.  Importantly, neither of these propositions is that Gover was in the car or that he fired shots.

"Confrontation Clause errors are subject to harmless-error analysis."  *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007).  We "assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness . . . ."  *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007).  In *Brecht v. Abrahamson*, the Court held that the harmless-error standard announced in *Kotteakos v. United States*, 328 U.S. 750 (1946), applies in the context of habeas review.  507 U.S. 619, 638 (1993).  Under the *Brecht* standard, "an error requires reversal only if it 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Id.* at 631 (quoting *Kotteakos*, 328 U.S. at 776).  If a judge is in "*grave doubt* about whether or not that error is harmless," "the uncertain judge should treat the error . . . as if it had a 'substantial and injurious effect or influence in determining the jury's verdict.'"  *O' Neal v. McAninch*, 513 U.S. 432, 435 (1995).

To determine whether a Confrontation Clause error is harmless under *Brecht*, this court uses the factors discussed in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986).

*Vasquez*, 496 F.3d at 575.  The *Van Arsdall* factors include:  (1) "the importance of the witness' testimony in the prosecution's case," (2) "whether the testimony was cumulative," (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points," (4) "the extent of cross-examination otherwise permitted," and (5) "the overall strength of the prosecution's case."  *Van Arsdall*, 475 U.S. at 684.

The foregoing has been this court's standard that is applicable when harmless error is raised by a party to a case.  In exercising our discretion to raise harmless-error sua sponte, we must "err on the side of the criminal defendant" and take extra precaution to ensure that the error is in fact harmless under *Brecht*.  *United States v. Pryce*, 938 F.2d 1343, 1348 (D.C. Cir. 1991) (Williams, J.).

Here, there is no doubt that Officer Johnson's testimony did not prejudice Gover so that it had a "substantial and injurious effect or influence in determining the jury's verdict."  Johnson's testimony was not important to the prosecution's case because he did not identify Gover in any way.  Furthermore, to the extent that Johnson's testimony had any influence on the jury, it was corroborated by many other witnesses who testified that black individuals fired from the backseat of the car.

At least four individuals testified that they saw shots come from the backseat of the car.  When asked, "when it (the gun) came out, had it been from the right side front or the right side rear," Rich Taylor answered, "Rear."  [R. 11, Ex. 11 at 65].  Latoya Warfield, when asked, "And, you saw some people in the backseats doing some shooting?" responded, "Yes."  [R. 11, Ex. 12 at 17].  Leon Kennedy testified that, "The gun came out of the back passenger window."  [*Id*. at 29].  Donica Warfield, when asked what she saw the occupant of the driver's side backseat doing, responded, "Shooting.  He pulled out a gun, and started shooting toward 14817 (the Rosemary house)."  [*Id*. at 40].

A number of individuals also testified that they saw black individuals in the backseat.  When asked, "A black male, as opposed to a white male?" Rich Taylor answered, "Yes."  [R. 11, Ex. 11 at 68].  Latoya Warfield was asked, "Okay.  And, the

people that you saw in the back seat, could you tell whether they were white or black?" Her response: "Black." [R. 11, Ex. 12 at 15].  When asked to describe the individuals in the backseat of the car, Leon Kennedy responded, "Two black males."  [*Id*. at 28]. Donica Warfield, when describing the occupants of the car's front seat, stated, "Two white girls.  And two black boys in the back."  [*Id*. at 37].

Thus, the impact on the jury of Johnson's testimony as to what Ratliff told him was very minimal.  It was not specific as to Gover and many other eye witnesses testified to the same facts.

When considering the overall weight of the evidence against Gover and the strength of the prosecution's case, the harmlessness of Johnson's testimony becomes clearer. Ike Pennington identified Dennis Gover specifically as the shooter.  Pennington testified that, "A black pistol came out of the window."  When asked who was holding the pistol, Pennington stated, "Dennis Gover."   [R. 11, Ex. 14 at 4].  Pennington identified Gover in a police lineup as the individual who "looked at me and did the shooting." [*Id*. at 9].

Others testified that they helped place Gover, who was on crutches at the time, in the backseat or saw him get into the backseat of the car prior to its departure from the Lannette house.  Kwesi-ana Brown testified that he helped Gover get into the car and that Gover was in the backseat upon departure.  [R. 11, Ex. 11 at 25-26].  Charles Coppage testified that he saw Gover get in the car, come back in the same car, and that when the car came back, Gover was carrying a nine millimeter weapon.  [R. 11, Ex. 17 at 13-17].  Coppage also testified that, on getting out of the car, Gover stated, "I hope I killed one of those mother f___ers," [*Id*. at 17], and that he emptied his gun after they laughed at him [*Id*. at 18].  Roger Lee testified that, once Gover returned from the Lannette house, he said "the beef is on" and "I busted a cap at them."  [R. 11, Ex. 13 at 51-52].  As a result, it is fair to conclude that the weight of the evidence is also such that Officer Johnson's relevant testimony was of little, if any, significance in the jury's finding of guilt.

Gover failed to show the type of actual prejudice required before relief is warranted on a Confrontation Clause violation. The testimony admitted was not specific to him, was cumulative of the testimony of others, and was of extremely little weight when compared to the weight of the totality of the evidence admitted against Gover. As a result, it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (citation omitted). Thus, we affirm the district court's ruling that the error was harmless and deny habeas relief with respect to Gover's argument concerning Johnson's testimony.

## III.

Gover also asserts that he is entitled to relief based on the testimony of Officer Jamison. Officer Jamison arrived at the Rosemary house shortly after the shooting and took statements from witnesses, Rosemary Salter, Shawn Salter, and Tiffany Warfield. Jamison then testified to the substance of those statements at Gover's trial. The Michigan Court of Appeals considered whether the statements were properly admitted before concluding that the "evidence was properly admitted because it was not offered for the truth of the matter asserted, but rather to demonstrate the police officers' state of mind by explaining why they took actions that led to defendant's arrest." *People v. Gover*, No. 203768, 1999 WL 33437846, at *9 (Mich. Ct. App. Aug. 17, 1999).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), that conclusion is entitled to deference. Pursuant to the relevant prong of the statute, habeas relief is warranted only if the state Court of Appeals' adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). An "*unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., concurring). It is something more; it is "unreasonable." *Id.* Further, this portion of the statute "requires federal courts to focus on what a state court knew and did, and to measure state-court decisions against [the Supreme] Court's precedents *as of the time the state court renders its decision*." *Greene v. Fisher*,

132 S.Ct. 38, 44 (2011) (internal quotations omitted).  Thus, Supreme Court precedent as of August 17, 1999, the date of the Michigan Court of Appeals' adjudication, is the standard by which the Court of Appeals' decision must be measured against under 28 U.S.C. § 2254(d)(1).[4]

Under *Ohio v. Roberts*, out-of-court statements introduced for the truth of the matter asserted do not violate the Confrontation Clause if the statement bears "adequate 'indicia of reliability,'" usually meaning that the relevant "evidence falls within a firmly rooted hearsay exception."  448 U.S. 56, 66 (1980); *see also White v. Illinois*, 502 U.S. 346, 357 (1992) (holding that showing unavailability of a declarant is not required before introducing otherwise valid out-of-court hearsay statements).  Here, however, the Michigan Court of Appeals did not find that the contested statements were introduced for the truth of the matter asserted.  In fact, the opinion was quite clear that "this evidence was properly admitted because it was not offered for the truth of the matter asserted, but rather to demonstrate the police officers' state of mind by explaining why they took actions that led to defendant's arrest."  *Gover*, 1999 WL 33437846, at *9.

The Supreme Court jurisprudence of the time recognized a close, but not entirely overlapping relationship between the hearsay rules and the Confrontation Clause.  *See White v. Illinois*, 502 U.S. 346, 352-53 (1992) ("We have been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting admission of hearsay statements.  Nonetheless, we have consistently sought to steer a middle course that recognizes that hearsay rules and the Confrontation Clause are generally designed

---

[4]Perry urges us to apply *Crawford v. Washington*, 541 U.S. 36 (2004), a case that dramatically altered Confrontation Clause analysis, in addition to clearly existing federal law in 1999.  The Supreme Court has spoken on this exact issue and rejected the possible retroactivity of *Crawford*.  When considering whether *Crawford* should be applied instead of *Roberts* to a habeas petitioner whose state court Confrontation Clause claim was finally adjudicated on direct review under *Roberts*, the Supreme Court stated that, "[b]ecause *Crawford* announced a 'new rule' and because it is clear and undisputed that the rule is procedural and not substantive, that rule cannot be applied in this collateral attack on respondent's conviction unless it is a watershed rule of criminal procedure."  *Whorton v. Bockting*, 549 U.S. 406, 417 (2007) (internal quotation omitted).

After a lengthy analysis, the Court held that *Crawford* "does not qualify as a rule that altered our understanding of the bedrock procedural elements essential to the fairness of a proceeding" and is not a watershed rule.  *Id*. at 421.  As a result, *Crawford* should not be applied retroactively by a habeas court reviewing a state court adjudication that initially adjudicated the claim under *Roberts*.  *See id*. at 414-15, 421 (overturning the 9th Circuit's "holding that *Crawford* applies retroactively to cases on collateral review").

to protect similar values.") (internal quotations omitted).   Thus, if an out-of-court assertion fell within a firmly rooted hearsay exception, it bore adequate indicia of reliability and its introduction would not violate the Confrontation Clause.  *Id*. at 357.

The difference here, however, is that Officer Jamison's testimony did not come into evidence for the purpose of "asserting" anything, at least according to the Michigan Court of Appeals.  Per the Court of Appeals, the statements of the witnesses were only relevant to show how Officer Jamison responded.  Under this line of thinking, testifying to the statements was no different than testifying to something else that Officer Jamison heard that influenced his behavior, gunshots or screaming, for example.  Therefore, the introduction of "nonhearsay" evidence did not implicate the Confrontation Clause.

The Supreme Court reached the same conclusion in *Tennessee v. Street*, when it held that, "[t]he *nonhearsay* aspect of [a co-defendant's] confession – not to prove what happened at the murder scene but to prove what happened when [the defendant] confessed – raises no Confrontation Clause concerns."  471 U.S. 409, 414 (1985).  The Court stated further that, "[t]he Clause's fundamental role in protecting the right of cross-examination…was satisfied by Sheriff Papantoniou's presence on the stand."  *Id*.  The Court reasoned that the nonhearsay aspects of the confession could be adequately challenged by having the individual who recorded the confession testify.  In this case, the analogous individual was Officer Jamison.  Since he was available for cross-examination and free to answer questions about the nonhearsay statements he heard, Gover's confrontation rights were not violated under existing law.  This, of course, is predicated on the assumption that the statements were nonhearsay.

With respect to that issue, the Michigan Court of Appeals' ruling that the statements were nonhearsay is entitled to deference.  "[S]o long as 'fairminded jurists' could disagree on the correctness of the state court's decision," this court must not grant habeas relief.  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In *United States v. Linwood*, the Seventh Circuit noted that detectives who "testified, over objection, to the effect that Lavesta told them that her mother, the defendant, sold drugs out of their apartment *not to prove the truth*

*of the matter asserted, but to establish why the defendant reacted as she did upon hearing the statement.*"   142 F.3d 418, 425 (7th Cir. 1998).   In other words, the statements were introduced to show the effect on the listener; "[t]he case law of [the Seventh] Circuit leaves no doubt that this is a non-hearsay purpose." *Id*; *see also United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir. 1989) (finding that a declarant's "statements were offered as evidence of [the listener's] state of mind" and that the statements were nonhearsay).

While it is clear that "effect on the listener" is a valid nonhearsay purpose in the abstract, it is less clear, however, how the impact on Jamison's state of mind mattered to the substance of the case.   Only when the nonhearsay purpose is relevant can the evidence in question be correctly labeled as "nonhearsay." *See United States v. Johnson*, 71 F.3d 539, 543 (6th Cir. 1995) (holding that declarations introduced to show their effect on the defendant listener were valid nonhearsay introduced for a valid purpose only because "defendant's state of mind is an element of the offense").   The Michigan Court of Appeals found that the testimony was permissible because it "demonstrate[d] the police officers' state of mind by explaining why they took actions that led to defendant's arrest." *Gover*, 1999 WL 33437846, at *9.   The relevant portion of Officer Jamison's testimony is:

> Q      Okay.  And as it relates to the two black males, you were given a description of a black male?
> A      Yes.
>         . . .
> Q      Give me the description of the one black male you had.
> A      Black male; he's eighteen years old; he's medium complected; he had on a green plaid flannel shirt and no other description.  He was armed with a blue steel automatic.
>         . . .
> Q      What were they saying?
> A      Gentlemen who were out in front of the, they were in front of 14817 Rosemary.  They said the vehicle pulled up with the white females in it and two black males.  They asked for Rickie.  They said Rickie didn't live there and they pulled off.  And as they pulled off, the black males leaned out of the vehicle and began firing shots.

Q        Okay.  And they indicated the shots were coming all from the
         back seat?
A        Yes.
Q        Did anybody, any witness, whatsoever, ever indicate that the
         white females fired a weapon?
A        No.

[R. 11, Ex. 14 at 58-61].

Providing "background of a police investigation" has been rejected as a valid nonhearsay purpose in some instances.  "To allow testimonial repetition of a declarant's out-of-court charge that the defendant would engage or was engaged in specific criminality would seem to create too great a risk that [prejudice would] actualize.  That risk cannot be justified simply to set forth the background of the investigation."  *United States v. Mancillas*, 580 F.2d 1301, 1310 (7th Cir. 1978).  At the same time, in other instances, this circuit has stated that "statements [that] were not offered for the truth of the matter asserted…but only to provide background information and to explain how and why [law enforcement] even came to be involved with [a] particular defendant" are admissible nonhearsay.  *United States v. Aguwa*, 123 F.3d 418, 421 (6th Cir. 1997); *see also United States v. Wilson*, 107 F.3d 774, 780 (10th Cir. 1997) (reaffirming a prior holding that "'out of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken'") (quoting *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987)).

If this court were conducting a *de novo* review, it would be permissible to determine whether the conclusion that Officer Jamison's testimony was valid nonhearsay was correct or incorrect.  While the possibility that it was an incorrect conclusion is distinct, the question is not whether the Michigan Court of Appeals was correct, but rather, whether their conclusion was "unreasonable."  28 U.S.C. § 2254(d).  Given the fact that there was precedent at the time that providing background to a police investigation through out-of-court statements was a permissible nonhearsay purpose, we must conclude that it was not unreasonable.  It is certainly within the large scope of conclusions "fairminded jurists" could reach, even if others disagreed.  *See Harrington*, 131 S.Ct. at 786.

In sum, clear Supreme Court precedent at the time of the state court adjudication held that the introduction of nonhearsay, such as that implicated here, did not violate the Confrontation Clause.  In addition, fairminded jurists could disagree on whether the relevant portion of Officer Jamison's testimony was nonhearsay or hearsay.  Thus, the state court's decision was not unreasonable under 28 U.S.C. §2254 (d)(1) and is entitled to deference; as a result, this court shall deny habeas relief.

## IV.

For the reasons stated above, we affirm the district court's denial of habeas relief to petitioner Dennis Gover.