SHEA, District Judge, dissenting:
I respectfully dissent. Federal habeas relief is available under Section 2254 only to remedy "extreme malfunctions in the state criminal justice systems" in "cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter , 562 U.S. 86, 102-03, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). The New York court's application of Tennessee v. Street , 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985), the Supreme Court decision most pertinent to this case, does not satisfy that demanding standard because it reflects a reasonable accommodation of the competing interests identified in that decision. The Street Court held that the Confrontation Clause's "mission" is "to advance the accuracy of the truth-determining process in criminal trials," and that to fulfill that mission, trial judges must attend to both "assur[ing] the integrity of the trial's truth-seeking function and eliminat[ing] the risk of the jury's improper use of evidence." Id. at 415, 105 S.Ct. 2078 (emphasis added). Here, the state trial judge reasonably applied the first of those two principles by admitting the detective's account of Jeannot's accusation for the proper, non-hearsay purpose of allowing the State to counter the defendant's explanation about why he changed his story. Excluding that evidence would have enhanced the credibility of Orlando's second version of events, which was the one his lawyer urged the jury to adopt, and thus frustrated the trial's truth-seeking function. The trial judge also reasonably applied the second principle by twice giving a detailed limiting instruction that the jury was not to consider Jeannot's accusation for its truth and, indeed, not to consider whether he had made it at all. While I acknowledge that this case is harder than Street , I conclude that fairminded jurists could disagree on whether the state court properly *131 applied that decision and thus that the district court properly denied the writ.
I
The majority's recounting of the record is thorough, but I offer two clarifications to explain my views.
First, Orlando's trial counsel did not object to all of Detective McGinn's testimony about the interview with Jeannot. Indeed, he used a portion of it to bolster Orlando's explanation that he changed his story and told the truth once his fear of Jeannot had lifted after he learned that Jeannot had confessed. The issue involved in this appeal first arose when the State sought a ruling in limine to admit Detective McGinn's testimony that "I confronted [Orlando], I told him that [Jeannot's] giving it up and he's telling us he did the shooting and he's telling us you made him." T. 164. During the in limine proceeding, the prosecutor told the trial judge that the purpose of this testimony would be "to establish the context in which the defendant all of a sudden changes his initial story ...." Id . Defense counsel then made his Confrontation Clause objection, pointing out that there had been a Bruton severance "to protect the defendant not being able to cross examine any statements that would be used against him in this case such as the codefendant's Herva Jeannot ... perhaps even six as a number of statements that Mr. Jeannot had made." T. 165.[1] Specifically addressing the prosecutor's motion, he then stated as follows:
"[I]f we're talking perhaps about one of the last statements that Mr. Jeannot had made regarding ... giving it up or giving up the entire thing, opposed to that Mr. Jeannot had shot Mr. Calabrese, obviously I have no opposition to that. However, it's a matter of how much of that statement is going to be permitted .... But, I think in regard to what is being said and being [pared] down, I have no opposition to the fact Mr. Jeannot had indicated that Mr. Jeannot was present and Mr. Jeannot shot him. But I think anything in addition to that, again, is prejudicial. It violates my ability and right to cross-examine the individual that is now accusing my client of that, and I would move to preclude anything in addition to that first portion ...."
T. 165-66. In other words, defense counsel did not object to the portion of McGinn's statement that Jeannot said he shot Calabrese but did object to the portion that Jeannot said Orlando paid him to do it.[2] That was a sensible trial strategy, because the former portion supported Orlando's second version of events and his explanation that he lied initially out of fear of Jeannot and came clean once he learned that Jeannot had confessed. Defense counsel harped on this latter theme in both his opening statement and closing argument. T. 205 ("It's not until Herva Jeannot tells the detective that Herva Jeannot himself had shot Mr. Calabrese, that Mark then felt at ease that now they're not going to come after Mark."); T. 851 ("And there is no question Mark met with Detective McHugh, and he lied about certain things *132 to Detective McHugh. No question, not disputing that. And you heard from Detective McGinn, what happened, we will go over that a little bit, before Mark finally says, now I feel safe. Now I can tell you what happened. I don't want to be the first one, that Herva Jeannot killed Calabrese. I don't want him coming after my family.").
Second, the trial judge's ruling admitted only the statements by McGinn identified by the prosecutor in the pretrial hearing, i.e., that "I confronted [Orlando], I told him that [Jeannot's] giving it up and he's telling us he did the shooting and he's telling us you made him." T. 164-67. The ruling did not permit McGinn to give the vouching testimony stressed by the majority, i.e., that "I believe that Herva Jeannot was relaying some of the events that really took place that night." T. 620. That testimony was problematic, but not primarily because it violated the Confrontation Clause; it was inadmissible on multiple grounds - lack of personal knowledge (McGinn was not in the room with Jeannot), opinion by a lay witness ("I believe ...."), and vouching for another's statement (regardless of its content). Despite these obvious flaws, however, defense counsel did not object to it, move to strike it, seek a mistrial, or ask for an instruction that the jury disregard it - perhaps because it also vouched for the portion of Jeannot's alleged statement that defense counsel would use to his client's advantage - that Jeannot said he shot Calabrese. Nor did Orlando raise McGinn's vouching statement in the appeal of his conviction, his habeas petition before the district court, or his appeal brief in this Court. While it is still proper to consider it under Street - because it goes to the risk that the statement "Orlando paid him to do it" would be misused by the jury (which I discuss below) - it is important to note that the trial judge's pretrial ruling applying Street did not authorize McGinn's vouching statement.[3]
II
Orlando contends that the Appellate Division unreasonably applied Bruton and Street when it held that admitting the detective's statement that "[Jeannot] said that he was the murderer but that Mark Orlando had paid him to do it" did not violate the Confrontation Clause.[4] Whether that is so boils down to two questions: (1) was there a proper non-hearsay purpose for the statement, which requires considering the degree to which exclusion of the detective's statement would have impeded the jury "in ... evaluating the truth of [Orlando's explanation as to why he changed his story] and ... weighing the reliability of his [second and third statements to the police]"; and (2) if so, could the statement nonetheless "have been misused by the jury"? Street , 471 U.S. at 414, 105 S.Ct. 2078. Street suggests that the second question involves consideration of (1) the trial court's limiting instructions; (2) whether the prosecutor made proper *133 use of the statement during the trial; and (3) whether there were "alternatives that would have both assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of the evidence." Id. at 415-16, 105 S.Ct. 2078. There is at least a "possibility fairminded jurists could disagree" about whether the New York courts properly answered these questions.
Proper Purpose
The non-hearsay purpose here was similar to the one that prevailed in Street : to shed light on the credibility of Orlando's second statement to the police. See Street , 471 U.S. at 415, 105 S.Ct. 2078 ("Had the prosecutor been denied the opportunity to present Peele's confession in rebuttal so as to enable the jury to make the relevant comparison, the jury would have been impeded in its task of evaluating the truth of respondent's testimony and handicapped in weighing the reliability of his confession."). Orlando claimed that he had lied in his first statement out of fear of Jeannot, but once told of Jeannot's confession, his fear lifted and he gave a truthful account in his second statement.[5] The State would have had no answer to the fear-dissipation narrative had the trial judge sustained defense counsel's objection and excluded only the portion of McGinn's statement in which he said Jeannot implicated Orlando in the murder. Orlando started hinting at his alleged fear of Jeannot as soon as McGinn told him that "Detective McHugh was over there talking to Herva [Jeannot] and he was probably giving us, you know, other facts that happened that night, the truth as to what happened that night." T. 620. At that point, for the first time, Orlando said, "detective, you don't understand," a refrain he then repeated several times before telling McGinn that "he was afraid for his family" and slept next to a shotgun. Id. at 623. According to McGinn's testimony, it was not until McGinn added "[Jeannot] stated he was the murderer but that Mark Orlando paid him to do it" that Orlando finally stated "okay, I will tell you the truth" and "then began to tell [McGinn] another version of events that happened that night." Id . at 624-25.
That sequence fit both the State's account that Orlando changed his tune only when told he was being accused and Orlando's account that he did so because Jeannot's confession meant he was no longer a threat. But without the piece of McGinn's testimony that he told Orlando Jeannot was implicating him, Orlando's explanation for his change of story would have been a good deal stronger and the overall credibility of his second statement would have been enhanced. And Orlando's defense hinged on the credibility of that statement. In his closing argument, defense counsel focused on convincing the jury that Orlando's second statement was truthful and that his first had been a lie born of his fear of Jeannot. T. 845 ("[E]verything that Mark Orlando had told Detective Cereghino is corroborated by the sixty or so exhibits introduced into evidence. Everything here supports what Mark had said."); id. ("Herva ... [t]hreatened to kill his wife if he said anything. ... Here's a vicious murder. Why didn't Mark go to the police. I think you see now the answer to that. When I discussed how it was that he gave the first version to the one detective, McHugh, and then to Detective McGinn, finally to Detective Cereghino."). That narrative would have been much more persuasive if supported by the piece of McGinn's testimony defense counsel wanted before *134 the jury - that McGinn told Orlando that Jeannot had confessed to the shooting - and left unrebutted by the remaining piece defense counsel wanted out - McGinn's testimony that Jeannot was also implicating Orlando. Had the trial judge excluded the portion of McGinn's testimony to which defense counsel objected, "the jury would have been impeded in its task of evaluating the truth of [the defendant's second statement]." Street , 471 U.S. at 415, 105 S.Ct. 2078. The Appellate Division's affirmance of the trial judge's ruling thus reflects a reasonable application of Street .
To be sure, the trial judge could have excluded all testimony about confronting Orlando with the Jeannot interview - leaving both sides with no explanation about why Orlando changed his story - but no one asked him to do so. And no one asked the Appellate Division to decide whether the he should have done so sua sponte . As presented to the New York courts, the issue was limited to whether McGinn could recount Jeannot's statement that Orlando had paid him to commit the murder. Orlando's trial counsel explicitly declined to object to the portion of Jeannot's statement in which he implicated himself. T. 165-166 ("I have no opposition to the fact Mr. Jeannot had indicated that Mr. Jeannot was present and Mr. Jeannot shot him.").
The majority points out that Orlando did not take the stand at his trial. Thus, unlike in Street , the State was not forced to rebut a defendant's testimony. But the Court's opinion in Street does not suggest that its sanction of non-hearsay use of an accomplice's statement turned on the defendant's election to testify in that case. Nor does it suggest that the government may use such a statement to attack the credibility of a defendant's statements only when the defendant offers them.[6] It was not unreasonable for the Appellate Division to read Street as allowing nonhearsay use of an accomplice's statement to attack the credibility of, or provide context for, a defendant's statements offered in the government's case in chief. Indeed, several federal courts of appeal have interpreted Street the same way. See, e.g. , Lee v. McCaughtry , 892 F.2d 1318, 1325 (7th Cir. 1990) (reversing order granting habeas relief where state introduced tape of prosecutor's recounting of accomplice's statement to "place into context for the jury the metamorphosis of [the defendant's] accounts of events that took place at the murder scene": "Since the prosecutor's account of [the accomplice's] statements were offered not for the truth of those statements, but to explain the context of the defendant's change in his story, they are not hearsay, and, absent complicating circumstances, would not have violated the confrontation clause." (citing Street ) ); Furr , 440 F.3d at 36-41 (state court's application of Street "readily passes muster" under Section 2254 where prosecutor introduced accomplice's statement regarding gun and defendant's threatening letter to accomplice in its case in chief to support witness intimidation charge); Gover v. Perry , 698 F.3d 295, 307 (6th Cir. 2012) ("Given the fact that there was precedent at the time that providing background *135 to a police investigation through out-of-court statements was a permissible nonhearsay purpose, we must conclude that it was not unreasonable. It is certainly within the large scope of conclusions 'fairminded jurists' could reach, even if others disagreed.").
Risk of Misuse by Jury
While Bruton held that courts cannot expect juries to follow limiting instructions when, in a joint trial, they hear a co-defendant's statement implicating a defendant, the Supreme Court has treated that holding as a "narrow exception" to the "almost invariable assumption of the law that jurors follow their instructions." Richardson v. Marsh , 481 U.S. 200, 207, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Further, the exception applies "when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial ." Id. (emphasis added). Street made the same point more generally, stating that "[t]he assumption that jurors are able to follow the court's instructions fully applies when rights guaranteed by the Confrontation Clause are at issue." Street , 471 U.S. at 415 n.6, 105 S.Ct. 2078.
Here, the "invariable assumption" that jurors follow limiting instructions applies, because this case is much closer to Street than to Bruton . First, it was not a joint trial; indeed, like the Court in Street , the New York Appellate Division upheld the admission of an accomplice's statement against the defendant after the two had been severed for trial under Bruton . Second, again as in Street , the statement was not admitted for its truth and the jury was instructed not to consider it for that purpose. In Bruton , by contrast, the issue was whether, in a joint trial where a codefendant's statement implicating both Bruton and the co-defendant was admitted, the jury could follow an instruction to consider the codefendant's statement for its truth against the co-defendant while putting the same statement out of its mind entirely when deciding on Bruton's guilt. Bruton , 391 U.S. at 131, 88 S.Ct. 1620 ("In joint trials, however, when the admissible confession of one defendant inculpates another defendant, the confession is never deleted from the case and the jury is expected to perform the overwhelming task of considering it in determining the guilt or innocence of the declarant and then of ignoring it in determining the guilt or innocence of any codefendants of the declarant. A jury cannot segregate evidence into separate intellectual boxes." (internal quotation marks omitted) ). The Appellate Division thus properly cited Street as the most pertinent Supreme Court precedent here. People v. Orlando , 61 A.D.3d 1001, 1002, 878 N.Y.S.2d 185 (N.Y. App. Div., Second Dep't. 2009).
To be sure, applying Street properly involves more than just admitting any statement by an accomplice and instructing the jury not to consider it for its truth. Specifically, the Court's analysis in Street suggests that, in deciding whether to uphold the admission of an accomplice's out-of-court statement for a non-hearsay purpose under the Confrontation Clause, courts should consider (1) the adequacy of the instructions; (2) the manner in which the out-of-court statement was used at trial, 471 U.S. at 416, 105 S.Ct. 2078 ; and (3) whether there were "alternatives that would have both assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of evidence," ids="6203741" index="184" url="https://cite.case.law/us/471/409/">id. at 415, 105 S.Ct. 2078. I consider these factors below.[7]
*136 1. Limiting Instructions
Both when McGinn's testimony was admitted and in the final charge, the trial judge instructed the jury as follows:
Ladies and gentlemen, you have been permitted to hear testimony about remarks made to the defendant by Detective McGinn about statements allegedly made by Herva Jeannot. You're to consider this testimony only when considering the circumstances under which the defendant himself may have made statements and for no other purposes. You are to completely disregard any statement allegedly made by Herva Jeannot when considering evidence against the defendant.
Any statement allegedly made by Herva Jeannot is not evidence against the defendant and may never be considered as evidence against the defendant. You are not to concern yourself with whether Herva Jeannot did or did not make any statements to the police, and if he did, what those statements may have been or whether or not they were true.
I direct you in this regard and I will direct you again in my closing instructions to you.
T. 624; id. at 930-31.[8]
I do not agree that this instruction was "decidedly unclear." Maj. Op. at 124 n.16. On its face, it directs the jurors to disregard for any purpose any statement by Jeannot himself, but lets them consider how Orlando reacted when McGinn told him that Jeannot had made a statement implicating him. I do not to see how the instruction could have been made much clearer, and, apparently, neither did Orlando's counsel. His trial counsel did not object to the instruction, and his appellate counsel did not challenge it before the Appellate division. T. 136. Federal courts of appeal have found vaguer, less detailed instructions to be reasonable applications of Street . See Furr , 440 F.3d at 39 n.3 (holding that the state trial court's limiting instruction was adequate under Street even though it had not explicitly instructed the jury that it could not consider the "truth" of the statement); Lee , 892 F.2d at 1321, 1325-26 (upholding the denial of a § 2254 petition where the trial court instructed *137 the jury once - when the evidence was admitted - that "[i]t's a sequence of events. That is one thing that shows why hearsay may be offered just to allow us to see what happened next ... [Y]ou are not to take as substantive evidence the statement of Mr. Williams, because it is not here in Court. But it is offered to show you what happened next; okay? And not to take it as substantive evidence or as evidence that it actually happened."). Cf. Adamson v. Cathel , 633 F.3d 248, 258-259 (3d Cir. 2011) (granting a Section 2254 petition where an accomplice's out-of-court statements were offered against the defendant for a non-hearsay purpose but the state court failed to give any limiting instruction).
The majority contends that McGinn's vouching statement made the instruction unclear, but as noted, that statement was not a product of the trial court's ruling and there was no objection to it or request for an instruction that the jury ignore it. Even so, the trial judge's repeated admonition that the jury was not to consider whether Jeannot made any statement or whether it was true addressed McGinn's improper vouching for Jeannot, which was limited to a single sentence, i.e., "I believe that Herva Jeannot was relaying some of the events that really took place that night." T. 620. McGinn's other statements about "the truth" and "truer versions" when referring to Jeannot were directed at Orlando, not the jury, and when viewed in context and in the light of the limiting instruction, were part of McGinn's attempt to induce Orlando to provide more detail about the murder. T. 620 ("I went back in and I told Mr. Orlando that Detective McHugh was over there talking to Herva [Jeannot] and he was probably giving us, you know, other facts that happened that night, the truth as to what happened that night. Now would be the time for Mark Orlando to tell us what was going on."); T. 621 ("I went back into the room. ... Again, I explained to Mr. Orlando that Herva Jeannot was, in fact, giving up the, what we felt were truer versions of the events of Bobby Calabrese's murder. ... I told him that Herva Jeannot had given up where the gun was and that the defendant should at this point, if he wants his version of the story told tell us the truth at this point.").
Nor do I agree that the prosecutor undermined the trial judge's limiting instructions in his closing argument. Maj. Op. at 124. The prosecutor's only reference to McGinn's testimony about Jeannot's statement was followed immediately by a comment about why Orlando changed his story - the very non-hearsay use for which the testimony was admitted: "And Detective McGinn finally says, look, Herva's giving it up. Herva's telling us everything. So, come on. He's telling us he did the shooting and you paid him. And the defendant realizes the time is now. I don't care what story I had together at all. I am telling the story and he la[t]ches onto it and he can't get it straight." T. 895 (emphasis added.). This was consistent with the trial judge's instruction that the jury was to "consider [McGinn's recounting of Jeannot's] statement only when considering the circumstances under which the defendant himself may have made statements and for no other purpose." T. 930.
2. Use of the Statement at Trial
While he made only one reference to Jeannot's reported statement in his closing argument, the prosecutor made multiple references to Orlando's paying Jeannot, and I agree with the majority that the evidence supporting those references was weak - the presence of similar hundred-dollar bills in both Orlando's and Jeannot's homes. That circumstance makes this case harder than Street , because it raises the possibility that the jury might have, despite the judge's clear instructions, turned *138 back to Jeannot's reported accusation and considered it for its truth to find more support for the prosecutor's references to payment during closing argument. Even clear jury instructions can be ineffective in some circumstances, as Bruton and Street both teach.
As the majority notes, however, the state did not have to prove that Orlando paid Jeannot to kill Calabrese. What it had to prove was that Orlando aided and abetted the killing, and payment was not an element of that crime. In addition, there was evidence other than payment from which the jury could have found aiding and abetting - Orlando's soliciting Calabrese to meet in an isolated area, driving Jeannot to and from the scene, and stopping his car to enable Jeannot to take a final shot at Calabrese and discard the gun and ammunition, among others. Determining whether Orlando paid Jeannot was not a necessary part of the jury's task.
Further, the prosecutor's references to payment in closing argument were brief, and his central theme was to emphasize the incriminating parts of Orlando's second statement together with the implausibility of the part in which he cast himself as a surprised bystander at the murder scene rather than an accomplice. E.g. , T. 871 ("You don't think Herva Jeannot needed an accomplice, do you. Why would Jeannot need an accomplice. Why would Herva Jeannot need someone to get him in and out of that unfamiliar area. Why would Herva Jeannot need someone to lure Bobby into that desolate corner of Long Beach with the promise of a $17,000 payment. Why would Herva Jeannot need someone to distract Bobby. ..."); id. at 883-85 ("[A]sk yourselves, what would an innocent bystander in that situation have done. ... Your common sense tells you that an innocent bystander would have been in shock. ... How about our defendant. ... He's just seen Herva gun down Bobby. ... Herva says let's go and what does he do? He climbs into the Verona. ... The defendant starts to drive around Bobby's dying body. The defendant tells Herva he notices his feet was [sic] still moving, there was a little life left in him. ... So I stopped. Herva got out, Herva went over to the body and tried to shoot him a couple more times, but the gun wouldn't go off. So, Herva got back in. I drove him away. Is that the behavior of an innocent bystander in shock over what he's just seen?"); id. at 888 ("Now we're pulling up outside [a friend's] house and the defendant gets out of the car and Herva stays in the car. ... And you have proof beyond any reasonable doubt that the defendant was right in the middle of it. ... Do you think if the defendant were really an innocent bystander, ... who had just seen Herva execute Bobby on the street, that Herva would have let the defendant go into the [friend's] house on his own. ...").
Finally, while I cannot say that there was no risk of juror misuse of Jeannot's reported statement in light of the weaknesses in the State's evidence of payment, Street suggests that the existence of such a risk is not dispositive. Rather, the risk of misuse must be weighed against the risk of excluding critical evidence from the jury's consideration. Street , 471 U.S. at 415, 105 S.Ct. 2078 ("[T]here were no alternatives that would have both assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of evidence.").[9] Here, the Appellate Division weighed the risk of misuse *139 against the need to admit the detective's testimony about confronting Orlando with the accomplice's reported statement to enable the jury to consider all the facts bearing on the critical issue of the credibility of Orlando's second statement. It also factored into the balance the trial court's instruction directing the jury to confine its assessment of that evidence to the nonhearsay purpose for which it was admitted. Even if the Appellate Division's ruling ultimately struck the balance incorrectly, it reflected an application of Street about which "fairminded jurists could disagree." Harrington , 562 U.S. at 101, 131 S.Ct. 770 ; id . at 101-02, 131 S.Ct. 770 ("For purposes of Sec. 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. ... It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." (internal quotation marks omitted) ).
For these reasons, I would affirm the judgment of the district court denying the writ.

While the record does not disclose the trial judge's ruling regarding the Bruton severance, defense counsel's reference to "a number of statements" by Jeannot suggests there was more to it than merely eliminating the "payment" statement from Orlando's trial. It is thus not clear from the record that the "payment" statement "was the reason for the Bruton severance in the first place." Maj. Op. at 123.

I do not read defense counsel's later, summary reference to his objection as changing his position on the lack of objection to the portion of McGinn's statement that Jeannot said that he shot Calabrese. T. 591.

As I explain below, when placed in context, McGinn's other references to the "truth" and "truer versions" when testifying about Jeannot's interview do not appear to have been attempts to vouch for Jeannot to the jury.

Orlando also argues that the Appellate Division's ruling was an unreasonable application of Crawford . But Crawford is of limited guidance in addressing the factual situation here, except insofar as it reaffirms Street's holding that admission of out-of-court statements for nonhearsay purposes does not violate the Confrontation Clause. Crawford , 541 U.S. at 59 n.9, 124 S.Ct. 1354 ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. See Tennessee v. Street, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).").

As the majority notes, the second statement was followed by a substantially similar third, written statement. While there were differences between the two the prosecutor stressed in closing argument, they are not material to my dissent.

The two concurring justices in Street did make that suggestion, but their views did not carry the day. See 471 U.S. at 417, 105 S.Ct. 2078 ("With respect to the State's need to admit the confession for rebuttal purposes, it is important to note that respondent created the need to admit the statement by pressing the defense that his confession was a coerced imitation of [his co-defendant's] out-of-court confession.") (Brennan, J., concurring); see also Furr , 440 F.3d at 39 ("As the [Street ] Court issued a majority decision endorsed by six justices, however, and not merely a plurality opinion, the concurrence cannot be considered a viable Court holding.").

In its brief ruling, the New York Appellate Division did not canvass these factors, but it did cite Street and point out the non-hearsay purpose of the statement and the trial court's limiting instructions. People v. Orlando , 61 A.D.3d 1001, 1002, 878 N.Y.S.2d 185 (App. Div. 2d Dep't 2009). In Furr v. Brady , the First Circuit rejected a Section 2254 petition asserting that the state court had unreasonably applied Street because it had failed expressly to consider these factors. Furr v. Brady , 440 F.3d 34, 39-40 (1st Cir. 2006) ("[T]he [Street ] Court did not purport to prescribe a mandatory checklist of factors to be considered in every case. Rather, it noted, absent other circumstances, it is sufficient that the codefendant statement is nonhearsay - viz., not admitted for the truth of the matter asserted, and provided the court gives a limiting instruction to that effect. ... Thus the determination as whether the general rule of admissibility in Street applies is assessed case by case, based upon the presence of whatever special circumstances would create an unreasonable risk that the jury disregarded their instructions."). In any event, the brevity of the Appellate Division's consideration of the issue does not diminish the deference we owe its application of Street under 28 U.S.C. Sec. 2254. Harrington , 562 U.S. at 98, 131 S.Ct. 770 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing that there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for Section 2254(d) applies when a 'claim,' not a component of one, has been adjudicated.").

The first time the trial judge gave this instruction, the transcript does not reflect that he said "and" before "if he did, what those statements may have been or whether or not they were true."

As for "alternatives" to admitting the detective's statement in full, limiting the statement to "Jeannot said he was the murderer" would not have "assured the integrity of the trial's truth-seeking function." 471 U.S. at 415, 105 S.Ct. 2078. As discussed above, this redaction, which defense counsel sought, instead would have artificially enhanced the credibility of Orlando's second statement by supporting his account that he gave it because Jeannot's own confession had removed his fear that Jeannot would harm him and his wife if he told the truth.