[Cite as *State v. Baker*, 2020-Ohio-5094.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 19 CAA 12 0062 |
| TERRANCE BAKER | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:    Appeal from the Delaware County Court of Common Pleas, Case No. 19 CRI 02 0142

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    October 28, 2020

APPEARANCES:

For Plaintiff-Appellee

MELISSA A. SCHIFFEL
Delaware County Prosecuting Attorney

R. JOSEPH VARVEL
Assistant Prosecuting Attorney
Delaware County Prosecutor's Office
145 North Union Street
Delaware, Ohio 43015

For Defendant-Appellant

ADDISON M. SPRIGGS
Assistant State Public Defender
250 East Broad Street, Suite #1400
Columbus, Ohio 43215

*Hoffman, P.J.*

{¶1}　Appellant Terrance Baker appeals the judgment entered by the Delaware County Common Pleas Court convicting him of engaging in a pattern of corrupt activity (R.C. 2923.32(A)(1)), additional prohibited activities ( R.C. 1315.55(A)(1)), trafficking in cocaine (R.C. 2925.03(A)(1)), and receiving stolen property (R.C. 2913.51(A)), and sentencing him to an aggregate prison term of four years.  Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}　During the summer of 2018, Appellant and his girlfriend, Lindsey Clifford, resided in an apartment in Columbus, Ohio.  Also living in the apartment were Donald Gorey, Shelley Hagerman, Antonio Estrada, and Leanna Jimenez.  Jimenez moved into the apartment at the request of Appellant and Clifford, who asked her "to do what's going on at Home Depot" in order to make money.  Tr. 422.

{¶3}　Gorey, Hagerman, Estrada, and Jimenez would travel to Home Depot stores in the Columbus metro area, including stores in Delaware County, in a maroon Trailblazer owned by Clifford.  Sometimes Clifford would drive, and once or twice she went into Home Depot with the group.  Appellant did not travel with the group.  The group would enter the store and steal Milwaukee and DeWalt power tool sets.  At one point in time, the group went nearly every day to a Home Depot store in the area to steal power tools.

{¶4}　The group would return the tools to the apartment, where they would find the value of the items on the internet.  They would exchange the items with Appellant and Clifford for a percentage value of either cash or crack cocaine.  Appellant was in charge of the cash, but either Appellant or Clifford would distribute crack cocaine in exchange for

the power tools.  Clifford kept track of the transactions in a log book.  Appellant then sold the stolen tools to a man the group knew only as "The Russian."

{¶5}  During this time, Home Depot's shoplifting policy allowed only asset protection specialists (APS) to apprehend suspects or enter theft reports in the company's internal database.  Regular store employees were authorized to report incidents to the store manager, but were instructed not to stop suspects or call law enforcement.  APS employees were to enter incidents into the database within 24 hours of an incident.  Absent corresponding violence, individual incidents are typically not reported to law enforcement; thus, 85-90% of incidents are not reported.

{¶6}  Jamie Mansfield and Sean Frame worked for Home Depot out of Michigan as organized retail crime investigators.  In July of 2018, they became aware of the group of theft incidents conducted by the people living in Appellant's apartment.  The group was known inside the company as the Black Wig Group, based on Jimenez sometimes wearing a black wig into the store as a disguise.

{¶7}  Mansfield and Frame traveled to Ohio in August, 2018, to further investigate the series of thefts.  On August 7, 2018, they conducted surveillance outside a Delaware Home Depot store.  They observed a vehicle later identified as Clifford's vehicle arrive at the store.  Clifford was driving the vehicle.  Gorey and Jimenez entered the store and stole a Milwaukee portable tool power kit.  Frame and Mansfield followed the group to another store in Franklin County.  All three members of the group entered the store.  Clifford came out of the store with a DeWalt tool kit.  She drove the Trailblazer to the front of the store.  Gorey and Jimenez pushed a cart out of the store at a rapid pace, loaded

items from the cart into the Trailblazer, and drove away. A cashier and some customers came out of the store after seeing what was happening.

{¶8} Frame and Mansfield attempted to follow the Trailblazer, but lost it in traffic. They eventually located the vehicle at the apartment complex where Clifford and Appellant lived. They set up surveillance from a nearby Taco Bell parking lot. From there, Frame and Mansfield watched Gorey, Jimenez and Appellant carrying DeWalt and Milwaukee power tools from the apartment to the Trailblazer. Shortly thereafter, Appellant drove away in the Trailblazer. Frame and Mansfield attempted to follow, but lost the Trailblazer near a highway on-ramp.

{¶9} Surveillance continued throughout the next week, during which time the group continued to steal tools from Home Depot stores throughout the Columbus area. On August 17, 2018, law enforcement obtained and executed a search warrant on the apartment. Police seized a marijuana bong, a marijuana grinder, loose marijuana, crack pipes, Chore Boy, a syringe, digital scales, and a Spider security device. From the bedroom shared by Clifford and Appellant, they seized notebooks containing UPC codes or model numbers for tools. One of the notebooks had Clifford's name written on it. They also seized a Milwaukee charger and battery.

{¶10} Gorey, Jimenez and Clifford were arrested. Clifford called Appellant from the jail, and Appellant told Clifford not to "mention anything about anything." When she called him again, Appellant told Clifford he "was thinking about shitting his head" and was worried police had his phone. Clifford told Appellant to get out of town.

{¶11} Gorey and Jimenez agreed to cooperate with the police in exchange for plea agreements. Appellant and Clifford were charged by joint indictment with engaging

in a pattern of corrupt activity (R.C. 2923.32(A)(1)), additional prohibited activities ( R.C. 1315.55(A)(1)), trafficking in cocaine ( R.C. 2925.03(A)(1)), trafficking in heroin (R.C. 2925.03(A)(1)) and receiving stolen property (R.C. 2913.51(A)).  The case proceeded to joint bench trial in the Delaware County Common Pleas Court.  Following the presentation of evidence, the court dismissed the charge of trafficking in heroin.  Appellant was convicted of the remaining charges.  The court found the trafficking in cocaine and receiving stolen property convictions merged into the additional prohibited activities conviction, and the State elected to have Appellant sentenced for additional prohibited activities.  The court sentenced Appellant to four years incarceration for engaging in a pattern of corrupt activity and to thirty months incarceration for additional prohibited activities, to be served concurrently.

{¶12} It is from the November 12, 2019 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:


I. THE TRIAL COURT ERRED IN DENYING TERRANCE BAKER'S CRIM. R. 29 MOTION FOR ACQUITTAL, AND VIOLATED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE OF SUFFICIENT EVIDENCE OF VENUE, IT CONVICTED  HIM OF COUNTS 1, 2, 3, AND 5.

II. THE TRIAL COURT ERRED WHEN IT DENIED TERRANCE BAKER'S RIGHT TO CONFRONT WITNESSES BY PERMITTING THE STATE TO INTRODUCE HEARSAY EVIDENCE.

I.

**{¶13}** In his first assignment of error, Appellant argues the trial court erred in denying his Crim. R. 29 motion for acquittal on the basis the State failed to present sufficient evidence to establish venue in Delaware County.

**{¶14}** "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 164, *reconsideration denied*, 147 Ohio St.3d 1480, 2016-Ohio-8492, 66 N.E.3d 766, *citing State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶15}** While venue is not an essential element of a charged offense, venue must be proven by the state beyond a reasonable doubt unless it is waived by the defendant. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). Venue need not be proven in express terms as long as it is established by all the facts and circumstances in the case. *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969, paragraph one of syllabus (1907).

**{¶16}** R.C. 2901.12 provides in pertinent part:

> (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all

of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1) The offenses involved the same victim, or victims of the same type or from the same group.

(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4) The offenses were committed in furtherance of the same conspiracy.

(5) The offenses involved the same or a similar modus operandi.

(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

{¶17} Appellant argues there is no evidence he participated directly in any of the theft offenses in Delaware County, and there is insufficient evidence the offenses committed by others in the Black Wig Group were in furtherance of the same purpose or objective. We disagree.

{¶18} The trial court found as follows regarding venue:

As to venue, there was testimony from several witnesses, including Mr. Frame, Mr. Mansfield, Mr. Gorey, Ms. Jimenez, that a portion of the thefts here, and the receiving stolen property, occurred in Delaware County; specifically, The Home Depot stores on State Route 23 in Orange Township, Maxtown Road and Genoa Township.

As to the rest, the Court would find that the events that occurred in Franklin County constitute a continuing course of conduct as it relates to the events of this case.

**{¶19}** Tr. 1516.

**{¶20}** Appellant argues the testimony does not support a finding the members of the Black Wig Group were involved in a common enterprise with the same purpose, as the testimony of Jimenez and Gorey demonstrates they were involved in the enterprise for their individual purposes of getting money and/or drugs, and members of the group came and went throughout the relevant time period. We find the testimony, if believed by the trier of fact, is sufficient to support a finding the group had a common purpose, regardless of whether or not the persons involved in the group had individual motivations for participating in the group's common purpose. The testimony of Gorey and Jimenez demonstrates the group stole merchandise from Home Depot stores, including stores in Delaware County, which they would take back to the apartment they shared with Appellant, and exchange for cash or drugs. At times, the group stole items from Home Depot on a daily basis. Jimenez testified Appellant and Clifford asked her to live in their apartment in order "to do what's going on at Home Depot." She further testified Appellant

was in charge of when members of the group would go to Home Depot stores to steal more tools.  Appellant would in turn sell the stolen goods to a man Gorey and Jimenez knew as "The Russian."  We find there was sufficient evidence the acts were committed in furtherance of the same purpose to support a finding of venue in Delaware County pursuant to R.C. 2901.12(H)(3).

{¶21}  The first assignment of error is overruled.

II.

{¶22}  In his second assignment of error, Appellant argues the admission of hearsay evidence violated his right to confront the witnesses against him.  He specifically argues the hearsay fell into several categories:  observations of store employees of thefts which took place inside the stores, both as relayed to Frame and Mansfield and as detailed in the Risk 360 reports prepared by Home Depot employees; testimony concerning a traffic stop conducted by Sgt. Clark of Antonio Estrada, who was driving a vehicle belonging to "Ace," another person some members of the group sold tools to; and a PowerPoint presentation integrating incident reports, surveillance video, still photographs, and commentary on the information presented.[1]

{¶23}  The Confrontation Clause of the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Out-of-court statements by a witness which are testimonial in nature are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). If testimony qualifies as

---

[1] The trial court did not admit the PowerPoint presentation into evidence.  Tr. 1417.  The contents of the PowerPoint are therefore not at issue in this appeal.

nonhearsay, it does not implicate the Confrontation Clause. *Id.* at 59, *citing Tennessee v. Street,* 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985); *State v. Maxwell*, 139 Ohio St. 3d 12, 9 N.E.3d 930, 2014-Ohio-1019, ¶131. Evid. R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." We review trial court rulings which implicate the Confrontation Clause de novo. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97, *citing State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967), and *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010).

**{¶24}** We note the surveillance videos and photographs admitted into evidence are not hearsay, as there are no statements in either the videos or the photographs. Because they are not hearsay, they do not implicate the Confrontation Clause. *Crawford, supra.* However, the trial court also admitted testimony concerning employees' observations of thefts inside the store, as well as the Risk 360 reports prepared by Home Depot employees which included SKU numbers, the value of the items stolen, and descriptions of the thefts and the persons involved. The court found the testimony and reports were admissible as present sense impressions and business records, and thus exceptions to the hearsay rule pursuant to Evid. R. 803(1) and (6). The court found their admission did not violate the Confrontation Clause, as they were non-testimonial in nature.

**{¶25}** In *Crawford*, the United States Supreme Court suggested business records are "by their nature" nontestimonial. *Crawford* at 56, 124 S.Ct. 1354. And subsequently in *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 82, the

Supreme Court of Ohio held business records "are not 'testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are "by their nature" not prepared for litigation.'"

**{¶26}** However, in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the items of evidence at issue were reports by a company which provided forensic analysis on seized substances to establish whether they were illegal.  The United States Supreme Court held despite the fact the records were kept in the regular course of the company's business, the results of forensic drug testing were testimonial—they were requested by the police and prepared for presentation at trial, and were therefore subject to exclusion under the Confrontation Clause:

> Respondent also misunderstands the relationship between the business-and-official-records hearsay exceptions and the Confrontation Clause. As we stated in *Crawford*: "Most of the hearsay exceptions covered statements that by their nature were not testimonial--for example, business records or statements in furtherance of a conspiracy." Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because--having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial--they are not testimonial. Whether or not they qualify as business or official records, the analysts' statements here--prepared specifically for use at petitioner's trial--were

testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.

**{¶27}** (Citations omitted.) *Id.* at 324, 129 S.Ct. 2527. Because the analyst who created the records did not testify and was not subject to cross-examination, the forensic analysis was inadmissible because its admission violated the Confrontation Clause. *Id.*

**{¶28}** Thereafter, in *Bullcoming v. New Mexico*, 564 U.S. 647, 663-65, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), the Court held admission of the report of a defendant's blood-alcohol level violated the defendant's right to confront the analyst who prepared the report. The Court held the report was testimonial because it was a statement made in order to prove a fact at defendant's criminal trial, and the testimony of a substitute analyst who did not perform or observe the reported test did not satisfy the right to confrontation. The lower court held the surrogate testimony was "adequate to satisfy the Confrontation Clause in this case because [the actual analyst] 'simply transcribed the resul[t] generated by the gas chromatograph machine,' presenting no interpretation and exercising no independent judgment," and the defendant's "true accuser" was "the machine, while [the testing analyst's] role was that of 'mere scrivener.' " *Id.* at 659-60, 131 S.Ct. 2705. The Supreme Court disagreed, noting the surrogate analyst's testimony "reported more than a machine-generated number," and the surrogate could not convey what the original analyst knew and observed, or expose any lapses or inaccuracies by the original analyst. *Id.* at 660, 131 S.Ct. 2705.

**{¶29}** In the instant case, we find the SKU numbers and the value of items taken, included in the Risk 360 reports, were non-testimonial in nature. These figures served a

business purpose of Home Depot separate and apart from their potential use for prosecution, as these figures were necessary for inventory and accounting records of the stores impacted. However, we find the descriptions of the thefts included in the reports and relayed orally to Frame and Mansfield were testimonial in nature. Although there was evidence most of the Risk 360 reports generated by the company do not result in prosecution, we find no business use for the descriptions of the perpetrators of theft offenses in the store other than the potential use for apprehension and prosecution. We find this particularly true in the instant case, where some of these observations were made subsequent to Frame and Mansfield traveling from Michigan to Ohio for the express purpose of investigating and apprehending the suspects involved in the Black Wig Group. In fact, shortly after arriving in Ohio, Frame and Mansfield made contact with law enforcement in Delaware County concerning their investigation. We find these descriptions were testimonial in nature, and their admission therefore violated Appellant's right to confront the witnesses against him.

**{¶30}** But even in cases where the defendant has established a violation of rights under the Confrontation Clause, the Supreme Court of Ohio has consistently applied a harmless-error analysis to determine whether the issue prejudiced the defendant. *See McKelton* at ¶ 192, *quoting Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284, (1969).

**{¶31}** Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless-error standard of review, "the government bears the burden of demonstrating that the error did not affect the substantial

rights of the defendant." *State v. Perry*, 101 Ohio St.3d 118, 2004–Ohio–297, 802 N.E.2d 643, ¶ 15, *citing United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. *State v. Harris,* 142 Ohio St.3d 211, 2015–Ohio–166, 28 N.E.3d 1256, ¶ 37.

**{¶32}** The instant case was a bench trial, in which the trial court explained at length its reasoning for finding Appellant guilty. The trial court based its finding of guilt almost exclusively on the testimony of Gorey and Jimenez. While Appellant argues their testimony is not credible, the trial court took note of the potential credibility issues with their testimony, and explained its reasons for finding the testimony in the instant case to be credible. Tr. 1507-1511. Nothing in the trial court's explanation of its reasons for finding Appellant guilty suggests the court relied on the Risk 360 reports or the descriptions of the offenses and perpetrators provided by employees of Home Depot. Tr. 1512-1521.The trial court further had the opportunity to view the photos and videos, in which both Gorey and Jimenez identified themselves and others in the group stealing items. The videos showed members of the group leaving Home Depot without paying for items. In addition, Frame and Mansfield followed the group to Appellant's apartment after items were taken from a store in Delaware County, and observed Appellant loading into Clifford's SUV the types of tool kits Gorey and Jimenez admitted to stealing from Home Depot at Appellant's request. We find admission of the Risk 360 reports and

testimony concerning observations of employees of the Home Depot stores to be harmless beyond a reasonable doubt in the instant case.

{¶33} Appellant also argues his right to confront witnesses against him was violated when Det. Gannon testified he received a report from Det. Clark concerning the stop of a grey Honda, occupied by Antonio Estrada. Appellant objected on the basis of hearsay. The trial court overruled the objection, finding the testimony concerning Det. Clark's stop of the vehicle admissible as a present sense impression pursuant to Evid. R. 803(1). Appellant did not object to this testimony on the basis its admission violated his right to confront witnesses against him, and in discussing the Confrontation Clause issues, the trial court did not consider discuss this testimony. In any event, we find its admission was harmless error. Appellant argues the State failed to prove all of the goods stolen by the Black Wig Group were received by Appellant and Clifford. Evidence Estrada was stopped in a car belonging to another suspect to whom the Black Wig Group sometimes sold tools tends to benefit the defense, rather than harm the defense. Further, the trial court believed and relied on Jimenez's testimony 90% of the goods stolen by the group went to Appellant, and not to the man whose car Estrada was allegedly driving when stopped. Tr. 1512. The trial court further admitted into evidence the notebooks kept by Clifford, which established the value of the items which the group stole, brought back to the apartment, and traded to Appellant for cash and drugs.

**{¶34}**  The second assignment of error is overruled.

**{¶35}**  The judgment of the Delaware County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Gwin, J.  and

Baldwin, J. concur